ROBERT J. SCHMITT, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 6524

June 6, 1972                    497 P.2d 891

*H. Dale Murphy,* Public Defender, and *William H. White-head, III,* Deputy Public Defender, Washoe County, for Appellant.

*Robert List,* Attorney General; *Robert E. Rose,* District Attorney, and *C. Frederick Pinkerton,* Chief Deputy District Attorney, Washoe County, for Respondent.

322

## OPINION

By the Court, GUNDERSON, J.:

Convicted of possessing marijuana in violation of NRS 453.030, appellant contends police officers violated his Fourth Amendment rights when they detained and searched him as he and two companions left a public park near downtown Reno. As the officers acted without a warrant, the State was obliged to show appellant was searched incident to a lawful arrest upon probable cause, or his conviction cannot stand. Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967); Schnepp v. State, 82 Nev. 257, 415 P.2d 619 (1966); cf. Beck v. Ohio, 379 U.S. 89 (1964).

Inspector Van Curen, who precipitated appellant's detention and search, testified that from across the Truckee River, over 50 yards away, he saw appellant "appear to roll" and light a cigarette that burned in the dusk with a bright red glow, and observed the cigarette passed between appellant and his companions, who "cupped" their hands when smoking it. Van Curen then radioed Lieutenant Williams, "advised him of what I had observed," and sought help to stop appellant and his companions as they left the park. "From what I had seen," he testified, "we felt that we had reasonable cause to stop and inquire as to their activities, and who they were at this point." Van Curen expressly testified: "I did not arrest them." According to Van Curen, although he handcuffed and searched appellant, he believed that Lieutenant Williams had arrested appellant as a "disorderly person" because appellant had only a social security card to establish his identity.[1]

---

[1]Officer Van Curen testified:

"A.  As I arrived, Lieutenant Williams had advised the subject to lean against the car for a cursory weapons search. They were patted down, and found no weapons. And, after checking their age, and

However, Lieutenant Williams testified that although appellant was first asked for identification, then handcuffed and searched twice, he was not arrested as a disorderly person.

asking for identification, which they were unable to produce, Lieutenant Williams advised that I should handcuff the defendant. And at this time I did, also stating that they were going to take them in for disorderly person.

"Q. Take who in for disorderly person?

"A. The defendant, one other subject that was there, and the juvenile. The male juvenile suspect that was there was to be taken to Wittenberg. During this time the female that had been with them arrived back at the scene. After being told that he was to be taken to jail, I handcuffed him, and again I searched his person and his pockets of his clothes.

"Q. Why was he going to be taken to jail?

"A. He had been arrested as a disorderly person, under our City Ordinance.

"Q. Why was he arrested for disorderly person?

"A. He was unable to identify himself.

"Q. Was he asked for identification?

"A. Yes.

"Q. Did he produce any identification?

"A. I believe he had a social security card, which is not to be used as identification. And, after being handcuffed, he—

"Q. Were the other persons arrested for anything, other than the defendant?

"A. Yes. The other subject that was over eighteen was arrested as a disorderly, and the juvenile subject was taken to Wittenberg Hall as an unsupervised juvenile.

"Q. Well, the defendant was handcuffed and he was searched; is that correct?

"A. Yes, sir."

Obviously dissatisfied with this testimony, the prosecutor sought to "clarify" it:

"Q. Are you absolutely positive that this defendant was placed under arrest for disorderly person?

"Defense counsel: Your Honor, I believe the question has been asked and answered.

"Prosecutor: I would like to clarify it, your Honor.

"The Court: All right. It will go to credibility.

"Prosecutor: There were three persons there.

"By Prosecutor:

"Q. Did you tell the defendant that he was under arrest as a disorderly person?

"A. No, I did not. Both subjects that were adults were side by side, and I was between the two subjects, with my back to Lieutenant Williams. And he said, 'Handcuff them.' And then I did.

"At this time I didn't see who he was talking to; I had my back to him. I only assumed that when he said, 'handcuff him,' that we were going to take them both into custody for this charge.

"Q. Then you searched the defendant; is that right?

"A. Yes.

"Q. And you found this hand-rolled cigarette?

"A. Yes."

While Williams' testimony suggests he believed there was cause to arrest appellant for possessing marijuana, before any was found, he said Inspector Henry arrested appellant for possession of narcotics after Van Curen found a marijuana cigarette on his person.[2]

Inspector Henry's testimony established he had no substantial knowledge of events occurring before he arrived to assist Van Curen and Williams. Then, when Van Curen's search revealed marijuana, Henry arrested appellant for possession of narcotics.[3]

The question, obviously, is whether this record establishes

---

[2]Lieutenant Williams testified:

"Q. Did you see where Inspector Van Curen obtained the hand-rolled cigarette?

"A. I didn't see it when he found it, but he indicated to me that he had found it in the upper left-hand pocket of the suspect's coat.

"Q. Was the defendant informed that he was under arrest at that time?

"A. Not by myself.

"Q. Well, by any of the officers present?

"A. Yes, sir. He was informed by Inspector Henry.

"Q. And what reason was given for the arrest?

"A. Possession of narcotics."

[3]Inspector Henry testified:

"A. When I arrived on Arlington, Inspector Van Curen and Lieutenant Williams were conversing with three male subjects.

"Q. Do you see one of those persons in the courtroom?

"A. Yes, sir.

"Q. Would you point him out, please?

"A. He is seated at the defense table (pointing). . . .

"Q. What happened at this meeting with the other officers and the defendant and his two companions?

"A. As I say, when I arrived they were in a conversation. Shortly after I arrived the defendant here was cuffed, and—

"Q. Who placed the handcuffs on the defendant?

"A. I believe Inspector Van Curen did.

"Q. After that was done, what happened?

"A. He was then searched by Inspector Van Curen. In the defendant's jacket pocket, I believe the breast pocket, I'm not sure whether it was the left or the right, Inspector Van Curen pulled out a hand-rolled cigarette. . . .

"Q. What did Inspector Van Curen say when he found the hand-rolled cigarette?

"A. 'What's this'? And at that time the defendant replied, 'That's one of those cannabis things.'

"Q. All right. What did you do, if anything?

"A. Inspector Van Curen then walked away, and I immediately advised the defendant he was under arrest for possession of narcotics, and advised him of his constitutional rights."

a lawful arrest, to which appellant's search can be held incident. The answer must be in the negative.

1. Reno's "disorderly person ordinance," under which Van Curen incorrectly thought Williams had ordered appellant arrested, provides: "(a) Every person is a vagrant who: . . . (8) Loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification; . . ." Reno Municipal Code § 11.12.070 (1966).

Assuming that this ordinance is constitutional, that by being in a public park appellant was loitering or wandering "upon the streets or from place to place without apparent reason or business," and that the officers reasonably believed the public safety demanded appellant's identification, they still had no cause whatever to arrest appellant as a "disorderly person." Appellant identified himself when requested; the ordinance does not require citizens to corroborate their identity in any specific manner; thus, Van Curen was quite mistaken in his belief that appellant was subject to arrest because his social security card was inadequate identification. Therefore, if Williams had in fact ordered appellant's arrest as a "disorderly person," which he denies doing, appellant's arrest would have been unlawful, and Van Curen's search could not be sustained as "incident" thereto. Cf. Jones v. Payton, 411 F.2d 857 (4th Cir. 1969).

2. Except to the extent Van Curen believed Williams had arrested appellant as a "disorderly person," all officers agreed appellant was not formally arrested until Van Curen found marijuana on his person. Thus, the record virtually impels a finding that appellant was arrested after the contraband was found, and because it was found, in a search not incident to any lawful arrest.

3. The State seems to suggest, however, that we should uphold Van Curen's search of appellant as "incident" to an arrest for the crime of possessing marijuana, made by Van Curen or Williams prior to and independent of Van Curen's

search of appellant's person.[4] We cannot honestly do this, since a fair reading of the record makes it clear the officers did not have and knew they did not have cause to arrest appellant for possessing marijuana, before they searched his person. The State's argument that the officers had expertise in narcotics matters, which we should consider in reviewing the record, can have no weight when Van Curen himself did not assert cause to arrest appellant for possession of narcotics, but merely "reasonable cause to stop and inquire as to their activities."[5]

Furthermore, assuming appellant was arrested on the basis of Van Curen's original observations, those observations would not justify the arrest, even considering Van Curen's training and knowledge. Van Curen does not pretend he can distinguish the rolling of a marijuana cigarette from the rolling of a tobacco one.[6] While he testified he has been taught a marijuana cigarette burns with a brighter glow than a conventional tobacco cigarette, he acknowledged he was not an expert, and was unable to tell one from the other except by a comparison of their lights.[7] Moreover, neither he nor any other witness was able to say if a hand-rolled tobacco cigarette would oxygenate as rapidly as one of marijuana, and therefore burn as brightly.

---

[4]There might theoretically have been a valid search incident to such an arrest, though formal announcement of it followed the search, if the events were substantially contemporaneous. However, no arrest may be justified by what is found in the search. Hinton v. State, 84 Nev. 68, 436 P.2d 223 (1968); Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966); Beck v. Ohio, supra; Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160 (1949).

[5]If it be suggested that this court should determine that Lieutenant Williams secretly intended to, and did, arrest appellant on the basis of Van Curen's initial observations, the same result must obtain. Of course, an arrest may in some instances be justified on the basis of the composite knowledge of arresting officers. Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967). Still, we cannot justify appellant's warrantless search by imputing to Williams cause and unspoken intention to arrest appellant for possession of marijuana, contrary to the apparent evaluation and intention of Inspector Van Curen, who possessed all original knowledge of appellant's activities.

[6]Van Curen was asked:
"Q. Officer, are you so highly trained in narcotics work that you perceive distinctions in the rolling a tobacco cigarette and a marijuana cigarette?
"A. No."

[7]Van Curen was also asked:
"Q. Now, do you think at a distance of 50 yards, seeing the light from the cigarette, not seeing any associative glow, that you can tell the

True, Van Curen testified that he has been taught marijuana is often smoked with "cupped" hands, and that appellant was smoking with hands "cupped," a gesture the record does not describe. However, except for such suspicion as that mannerism, appellant's youth, and his presence in the park might arouse, the record establishes no cause for his arrest, prior to Van Curen's warrantless search of his person. We cannot hold that the police may stop, handcuff, and search any young person seen in a park, and justify this action by saying they saw a cigarette smoked with "cupped" hands. Cf. Henry v. United States, 361 U.S. 98 (1959).[8]

Reversed.

ZENOFF, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.

distinction between the glow of a cigarette and the glow of a marijuana cigarette?

"A.   I would be able to tell which was the brighter of the two.

"Q.   But this was only one light, is that correct?

[8]"The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. . . . Under our system suspicion is not enough for an officer to lay hands on a citizen." Id., at 104.