_____, A MINOR BOY, UNDER THE AGE OF 18 YEARS, APPELLANT, *v.* STATE OF NEVADA, RESPONDENT.

No. 8128

July 11, 1975                                        537 P.2d 477

[Rehearing denied August 26, 1975]

*Manzonie & Hawley,* Elko, for Appellant.

*Robert List,* Attorney General, Carson City; *Robert C. Manley,* District Attorney, and *Gary E. DiGrazia,* Deputy District Attorney, Elko County, for Respondent.

458

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a juvenile commitment order of the Fourth Judicial District Court in and for Elko County, Nevada.

1. On October 1, 1974, the Chief of Police of Wells, Nevada, C. E. Rutherford, and Sergeant Ron Cerveri went to Wells High School to investigate prior reports from at least one student that a minor whom we shall refer to as Alan, and several other high school students, had been possessing, smoking, and selling marijuana on the school grounds. By agreement between school authorities and Chief Rutherford, the school's band room was made available for questioning those students who had been reported. Eight students, including Alan, were called from their classes by the principal and directed to the band room. At the time the students were taken into the band room, the principal instructed his secretary to telephone their parents and request them to come to the school. Alan's mother was notified via a message left at her place of employment.

Sergeant Cerveri, an officer familiar with the appearance and odor of marijuana, was in the band room prior to the entry of the students. He testified that he could smell nothing prior to the students' appearances, but after their arrival he did detect the odor of marijuana; but he was unable to determine its source.

Chief Rutherford advised the students of their constitutional rights by reading from a Miranda warning card. He asked each student if he understood the warning, and then told them he was investigating the group for possession of marijuana. He stated that he intended to search each student if they and their parents permitted him to do so. Alan approached Sergeant Cerveri and asked if he could go to the rest room. Cerveri testified that he detected an odor emanating from Alan which he thought was marijuana. He asked Alan to remove the contents of his pockets. Alan removed a Marlboro cigarette package from his left shirt pocket, a leather pouch from his right pants pocket, and several miscellaneous items on his person, placing the items on a stool. Sergeant Cerveri testified that he looked into the leather pouch and the cigarette pack in Alan's presence. Cerveri thus saw the actual marijuana substance, and he stated that he placed Alan under arrest, then permitted Alan to go to the rest room while he accompanied him. Afterward, Cerveri took Alan into a room adjoining the band room, where Alan was again placed under arrest by the Chief, and the Miranda warning was again read to him. His mother was also present. The Chief asked Alan's mother if he could question him; she agreed. Alan was asked if he smoked marijuana, and he replied that he smoked about 2 or 3 joints a day. An agreement to produce was signed at that

time by Alan and his mother, and he was released to her custody.

A petition was filed on November 3, 1974, charging Alan with possession of a controlled substance, and a summons was issued and sent to Alan and his mother. Alan appeared with counsel in juvenile court on November 19, 1974. He denied the charge. A hearing date was set for January 13, 1975, but the hearing was continued at Alan's request. Motions to suppress and dismiss were denied on February 7, 1975. The district judge, sitting as juvenile court judge, heard the petition on its merits on February 27, 1975, and Alan was found guilty of committing the delinquent act. He had been on formal probation, which was revoked, and he was committed to the Nevada Youth Training Center.

2. Alan's first assignment of error is that the juvenile court erred in denying his motion to dismiss the petition. We do not agree. The motion to dismiss was predicated upon the ground that the juvenile court failed to comply with the mandates of the Juvenile Court Act in that: (1) Alan's mother was not immediately notified after Alan was taken into custody, as required by NRS 62.170(1);[1] (2) the petition was not filed within 10 days, as required by NRS 62.128(4);[2] and (3) there was a failure to comply with the intake and notice of rights provisions of NRS 62.193(2).[3]

---

[1]NRS 62.170, subsection 1:

"1. Any peace officer or probation officer may take into custody any child who is found violating any law or ordinance or whose surroundings are such as to endanger his welfare. When a child is taken into custody, the officer shall immediately notify the parent, guardian or custodian of the child, if known, and the probation officer. Unless it is impracticable or inadvisable or has been otherwise ordered by the court, or is otherwise provided in this section, the child shall be released to the custody of his parent or other responsible adult upon the written agreement signed by such person to bring the child to the court at a stated time or at such time as the court may direct. The written agreement shall be submitted to the court as soon as possible. If such person fails to produce the child as agreed or upon notice from the court, a writ may be issued for the attachment of the person or of the child requiring that the person or child, or both of them, be brought into the court at a time stated in the writ."

See also A Minor v. State, 89 Nev. 564, 517 P.2d 183 (1973).

[2]NRS 62.128, subsection 4:

"4. When a child is in detention or shelter care, a petition alleging delinquency or need of supervision shall be dismissed with prejudice if it was not filed within 10 days from the date the complaint was referred to the probation officer."

[3]NRS 62.193, subsection 2:

"2. The parties shall be advised of their rights under law in their

A reading of the transcript of the proceedings below shows that the maximum amount of time that could have elapsed from the time that Alan could be deemed to have been in custody until his mother was notified was approximately one hour. All reasonable efforts were made to contact the parents of the involved minors, including Alan's mother, almost immediately from the time the police authorities arrived at the school. There is no evidence of any intentional delay in contacting Alan's mother. Under the facts presented, the mandates of NRS 62.170(1) were satisfied.

We interpret "detention" or "shelter care" as used in NRS 62.128(4) as referring to a physical form of restraint. The purpose of the statute is to insure prompt filing of the petition, *so that the minor is not unreasonably physically detained.* In this case, Alan was immediately returned to the custody of his mother. When a minor is so released, he is no longer in "detention" or "shelter care" within the meaning of NRS 62.128(4). The mandates of the statute were not offended.

NRS 62.193(2) states in part that the parties shall be advised of their rights under the law "in their first appearance at intake and before the court." In this case, after the petition was filed on November 19, 1974, Alan appeared before Juvenile Court Judge Joseph O. McDaniel, with his counsel, was advised of his rights, and denied the allegations in the petition. Additionally, Alan was advised of his rights in the summons that was sent to him on November 5, 1974. Chief Rutherford also advised Alan twice at the high school in accordance with the Miranda warnings. Alan complains that the statute was violated in that he appeared before the juvenile court judge without first appearing before a probation officer. We see no merit to this argument. Apparently Alan anchors his argument on the wording of the statute that a juvenile must be advised of his rights in his first appearance "at intake." Alan was released at the school to his mother. There were no "intake" proceedings. He was fully advised of his rights. We see no violation of the statute.

3.  Alan contends that it was error not to grant his motion

first appearance at intake and before the court. They shall be informed of the specific allegations in the petition and given an opportunity to admit or deny such allegations."

to suppress the marijuana because it was the result of an illegal search and seizure.

In this case, since no search warrant was obtained, the burden is on the State to demonstrate that the warrantless search was constitutionally permissible.

A peace officer may make an arrest without a warrant "[o]n a charge made, upon a reasonable cause, of the commission of a felony by the party arrested." NRS 171.124(1)(d).[4] Thomas v. Sheriff, 85 Nev. 551, 459 P.2d 219 (1969). In Schnepp v. State, 82 Nev. 257, 260, 415 P.2d 619, 621 (1966), this court defined reasonable cause for arrest as being "such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person is guilty." The presence or absence of probable cause to arrest must be determined in the light of all the circumstances, and it is immaterial that each circumstance, taken by itself, may be consistent with innocence. Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965).

Sergeant Cerveri testified that he was trained in the recognition and identification of marijuana both by sight and by smell. Just prior to proceeding to the school on October 1, 1974, he was told by Chief Rutherford that students who were suspected of possessing marijuana would be questioned in the band room. Rutherford's information was predicated on one or more reliable informants. Cerveri testified that he smelled marijuana when the students entered the band room; that when Alan approached him and asked permission to go to the rest room, Cerveri thought he could smell marijuana emanating from Alan. He believed that Alan had marijuana on his person, and he suspected that he wanted to go to the rest room in order to dispose of it. All of these factors taken together gave Cerveri probable cause to believe Alan possessed marijuana. Probable cause is determined in light of all the circumstances.

Next, since the State claims that the search was incidental

---

[4]NRS 171.124(1)(d):

"1. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

". . .

"(d) On a charge-made, upon a reasonable cause, of the commission of a felony by the party arrested."

to the arrest, we must determine whether Alan was under arrest when the search was made. In NRS 171.104, an arrest is defined as "the taking of a person into custody, in a case and in the manner authorized by law." A formal declaration of arrest is not necessary in order to have an arrest. Kelley v. United States, 298 F.2d 310 (D.C. Cir. 1961); United States v. Murray, 492 F.2d 178 (9th Cir. 1973). In fact, " '. . . *It is sufficient if the person arrested understands that he is in the power of the one arresting, and submits in consequence.*' (Italics in the original.)" (Footnote omitted.) Kelley v. United States, supra, 298 F.2d at 312.

No statement was made by Cerveri that Alan was under arrest prior to the search. However, Cerveri testified that prior to the formal announcement of his arrest Alan was not free to leave. Alan submitted to the detention of his person, in that he made no attempt to leave the room without the permission of Cerveri. These facts indicate an intent on the part of Cerveri to arrest and an intent on the part of Alan to submit. A formal declaration, under these facts, was not necessary.

Where a valid arrest is made, the arrestee's person and the areas within his immediate control may be searched. Chimel v. California, 395 U.S. 752 (1969). Additionally, the High Court ruled in United States v. Robinson, 414 U.S. 218, 235 (1973):

". . . A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment."

We conclude, therefore, that the search under the facts presented was not unreasonable, and the denial of the motion to suppress was proper.

4. Alan's third assignment of error rests upon the contention the information provided Chief Rutherford by the minors

who assisted in the investigation of the case violated the provisions of NRS 454.306.[5] This statute, obviously, is intended to prevent a physician or other such professional from using a minor as an agent to deliver drugs contrary to the provisions of the statute. The purpose of the statute is to keep dangerous drugs out of the hands of minors. Appellant's reference to NRS 454.306 in this case is both misplaced and incorrect.

The commitment order of the court below is affirmed.

BATJER, ZENOFF, and THOMPSON, JJ., concur.

GUNDERSON, C. J., dissenting:

I respectfully dissent.

I would be quick to sign an opinion upholding this particular juvenile's commitment, if I believed such could be done consistently with legal principles. Like my brethren and the district judge, I believe a period of confinement at the Elko training school may be to his benefit. I believe, however, that the Constitution is too high a price to pay for his tuition.

As I see it, the majority here hold a police officer may arrest any person reported to have smoked marijuana, if the officer deems desire to utilize lavatory facilities suspicious, and if the officer either thinks, or says he thinks, that he can detect an odor of marijuana about the suspect's person.

I suggest a request to use the men's room typically reflects nothing more sinister than a wish to relieve one's bowel or bladder. I further suggest that merely because such request is made to a police officer by a schoolboy does not, as a matter of logic, enhance the import thereof. As the United States Supreme Court has said: "The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. . . . Under our system suspicion is not enough for an officer to lay hands on a citizen." Henry v. United States, 361 U.S. 98, 104 (1959). By direct analogy, that marijuana users may sometimes seek to flush contraband down toilets does not, as a matter of logic, evidence that a person asking to use a toilet has marijuana on his person.

---

[5]NRS 454.306:

"Every person who violates any provision of NRS 454.181 to 454.381, inclusive, by use of a minor as an agent or by unlawfully furnishing any dangerous drug to a minor shall be punished by imprisonment in the state prison for not less than 1 year nor more than 10 years, or by a fine of not more than $5,000, or by both fine and imprisonment."

I suggest that in this case there was no more justification for a warrantless search than in Schmitt v. State, 88 Nev. 320, 497 P.2d 891 (1972), wherein this court unanimously reversed a conviction on comparable facts.