451 A.2d 701

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph D. TRENGE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Feb. 14, 1983.

---

388

Carol K. McGinley, Assistant Public Defender, Allentown, for appellant.

William H. Platt, District Attorney, Allentown, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN,* JJ.

SUGERMAN, Judge.

In the instant appeal from judgment of sentence imposed for possession of a controlled substance following a bench trial, Appellant contends that the contraband was seized in the course of an unlawful warrantless search of his person and should have thus been suppressed. We disagree and therefore affirm.

Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn

---

* Pres. Judge John Q. Stranahan, of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge Leonard Sugerman, of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

therefrom are in error. *Commonwealth v. Jackson,* 497 Pa. 591, 595, 442 A.2d 1098, 1100 (1982) (*quoting from Commonwealth v. Johnson,* 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976)); *Commonwealth v. Horner,* 497 Pa. 565, 573, 442 A.2d 682, 685–86 (same); *Commonwealth v. DeCaro,* 298 Pa.Super. 32, 46, 444 A.2d 160, 167 (1982); *Commonwealth v. Nash,* 292 Pa.Super. 79, 83, 436 A.2d 1014, 1016 (1981).

In light of these principles, it appears that the facts underlying Appellant's contention, as developed at the suppression hearing below, are virtually uncontested and simply stated. On October 5, 1977, at approximately 10:30 a.m., Sergeant William Norton of the Salisbury Police Department, Lehigh County, Pennsylvania, while on duty, was walking through a wooded area in a public park in the Township, endeavoring to locate two truant juveniles he had reason to believe were in the park. As he proceeded, Sergeant Norton observed the juveniles, both of whom were known to him, seated upon a log in the company of Appellant who was unknown to him.

As Sergeant Norton approached the log, he detected the strong odor of burning marijuana. Although he observed no smoke and saw none of the three smoking, the odor intensified as Norton neared the trio. When he reached the log, Sergeant Norton asked Appellant for identification. As Appellant arose to comply with the request, Sergeant Norton observed what appeared to him to be the end of a pipe stem protruding approximately one-half inch from a pocket of Appellant's jacket.

Sergeant Norton, a 14-year veteran of the Allentown and Salisbury Township Police Departments, was particularly experienced in dealing with marijuana and implements and paraphernalia used to smoke the substance.[1]

Sergeant Norton testified that the pipe stem he observed was not the usual flat or pinched stem found on the ordinary smoking pipe but was, rather, rounded in shape and appeared to be metallic. Norton also testified that in his

1. Sergeant Norton testified without refutation that he frequently lectured on the subject. (N.T.S.H. 10)

experience, pipes fitted with such stems were commonly used to smoke marijuana and not ordinary tobacco.

Upon observing the pipe stem, Sergeant Norton grasped it and withdrew the pipe from Appellant's jacket pocket. Norton, having earlier observed a "bulge" under Appellant's jacket, commenced a "pat down" search of Appellant and at the same time, advised Appellant that he was under arrest for possession of marijuana. Norton continued the pat down search and in the area where he had earlier observed the bulge, under Appellant's outer jacket, Norton found a bag with a strap securing it over Appellant's shoulder. Sergeant Norton confiscated the bag, immediately opened it and discovered 350 grams of marijuana inside. Later, upon analysis, the pipe was found to contain marijuana residue.

Pretrial, Appellant moved to suppress the pipe and marijuana, and following a hearing, the suppression judge refused to suppress the same, concluding that both were seized pursuant to a lawful search based upon probable cause. Both the pipe and the marijuana found in the shoulder bag were introduced in evidence at Appellant's trial.

Ruling upon the same issues as raised in Appellant's post trial motions, the Court en banc concluded that the odor of burning marijuana, in combination with the protruding pipe stem, provided probable cause to arrest Appellant without a warrant. The court en banc also concluded that the marijuana found in the shoulder bag was the product of a search incident to a lawful arrest. *Opinion of the Court En Banc at 2.*

It is clear that a police officer may in appropriate circumstances stop and question a person for investigatory purposes when he observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *Commonwealth v. Dennis,* 289 Pa.Super. 305, 310, 433 A.2d 79, 81 (1981); *Commonwealth v. Galadyna,* 248 Pa.Super. 226, 232, 375 A.2d 69, 72 (1977). It is equally clear, however, that once

such person is restrained by physical force or show of authority,[2] the protections afforded by the Fourth Amendment to the Constitution of United States are implicated, *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *reh. den.* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980), and such person may not be searched without a warrant unless the police officer observes such unusual conduct on the part of the person searched that he may reasonably conclude that criminal activity may be afoot, and that the person with whom he is dealing is armed and dangerous, *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972) (*quoting Terry v. Ohio, supra* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908); *Commonwealth v. Mears,* 283 Pa.Super. 416, 418, 424 A.2d 533, 534 (1981) (collects cases), or the police officer has probable cause to arrest such person, *Commonwealth v. Jones,* 474 Pa. 364, 370, 378 A.2d 835, 839 (1977) (*quoting Commonwealth v. Berrios,* 437 Pa. 338, 340, 263 A.2d 342, 343 (1970)); *Commonwealth v. Hunt,* 280 Pa.Super. 205, 212, 421 A.2d 684, 687 (1980); *Commonwealth v. Stewart,* 257 Pa.Super. 334, 339, 390 A.2d 1264, 1267 (1978).

▮ Addressing the first of these exceptions, it is settled that a generalized suspicion or good faith on the part of a police officer that the subject of his focus is armed will not justify a search of the person; rather, the officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous". *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968); *Commonwealth v. Berrios, supra* 437 Pa. at 341, 263 A.2d at 343; *Commonwealth v. Prengle,* 293 Pa.Super. 64, 67, 437 A.2d 992, 994–95 (1981); *Commonwealth v. Williams,* 287 Pa.Super. 19, 23–4,

2. We are not here concerned with a brief investigatory stop by Sergeant Norton. *See U.S. v. Mendenhall, supra; Terry v. Ohio, supra; Commonwealth v. Jones, supra; Commonwealth v. Williams,* 287 Pa.Super. 19, 429 A.2d 698 (1981).

429 A.2d 698, 702 (1981); *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973).

At bar, Sergeant Norton testified on cross examination:
"[By Defense Counsel]

Q. Now, Officer Norton, when you came up to Mr. Trenge, were you in fear, apprehension or harm from Mr. Trenge?

A. I'm sorry, I fail to understand.

Q. Well, were you afraid that Mr. Trenge was going to attack you at any time?

A. He made no motion of that, no.

Q. Did you feel he was armed and dangerous?

A. I didn't know.

Q. Well, that's not my question. Based upon your contact with him, was it your impression that he was armed and dangerous?

A. He could have been, yes.

Q. He could have been. Again, that is not my question. My question is: Did you believe at that time that he was armed and dangerous? Yes or no, please.

A. I'd have to say yes.

Q. And what do you base that upon?

A. The circumstances involved.

Q. The circumstances that an individual is sitting in a park on a log with two juveniles that he was armed and dangerous? This is a public park, isn't it?

A. That's correct."

As is at once obvious, this testimony is utterly devoid of "particular facts" from which Sergeant Norton might reasonably have inferred that Appellant was armed and dangerous. *Sibron v. New York, supra.* Sergeant Norton's testimony that Appellant "could have been armed", and that he believed that Appellant was armed and dangerous by reason of the "circumstances involved", without more, are in our view gross generalities and do not rise to that level of "particularized" or "articulable" suspicion necessary to permit a search under the second of the two exceptions. *Sibron*

*v. New York, supra; Commonwealth v. Berrios, supra; Commonwealth v. Prengle, supra; Commonwealth v. Hunt, supra.* Accordingly, the search at bar can only be justified if at the moment Sergeant Norton conducted the search, he had probable cause to arrest Appellant.

The question we must answer, then, is whether the odor of burning marijuana in Appellant's immediate vicinity, in combination with Sergeant Norton's observation of the rounded pipe stem protruding from Appellant's jacket provided probable cause to arrest Appellant.

In *Commonwealth v. Kazior*, 269 Pa.Super. 518, 410 A.2d 822, *allocatur denied* 269 Pa.Super. 518, 410 A.2d 822 (1980), reiterated recently in *Commonwealth v. Simmons*, 295 Pa. Super. 72, 82, 440 A.2d 1228, 1233 (1982) and in *Commonwealth v. Allen*, 287 Pa.Super. 88, 102, 429 A.2d 1113, 1119–20 (1981), we enunciated the test for probable cause:

"A legal arrest without a warrant depends upon probable cause. *Commonwealth v. Pinney*, 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661 (1967), *cert. denied*, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967). Probable cause exists if the facts and circumstances which are within the knowledge of the police at the time of the arrest, and of which they have reasonable trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a suspect has committed or is committing a crime. *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Culmer*, 463 Pa. 189, 195, 344 A.2d 487, 490 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 428, 322 A.2d 119, 123 (1974); *Commonwealth v. Garvin*, 448 Pa. 258, 262, 293 A.2d 33, 35–36 (1972); *Commonwealth v. Bishop, supra.* The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton*, 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968). The standard of probable cause, however, must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause. *Commonwealth v. Roscioli,*

240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976). In *Commonwealth v. Tolbert*, 235 Pa.Super. 227, at p. 230, 341 A.2d 198, at p. 200 (1975), this Court said: When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial. *Commonwealth v. Devlin*, 221 Pa.Super. 175, 289 A.2d 237 (1972)."

*And see, Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Allen, supra; Commonwealth v. Williams, supra.*

It is apparent that Appellant was arrested for the crime of possession of marijuana. In the context of our definition of probable cause, then, we must determine whether Sergeant Norton's senses provided him with sufficient information to justify his conclusion that the suspected contraband was present.

■ It is obvious as well that Sergeant Norton relied primarily upon his sense of smell in concluding that marijuana was then present. At least since the Supreme Court of the United States decided *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), it has been clear that probable cause may be established in this fashion. *See,* LaFave, *Search and Seizure* (1978) § 3.6(b) at 648–54.

In *Johnson*, trained narcotics officers recognized the odor of burning opium emanating from a hotel room. They knocked upon the door, arrested the person who admitted

them[3] and searched the room without a warrant. The search revealed opium and smoking apparatus. At trial, the Court refused to suppress the opium and smoking apparatus, permitted the evidence to be admitted at trial, and the Defendant was convicted.

On appeal, the Defendant contended *inter alia,* that odors cannot constitute probable cause. Responding to this contention, the Court said pertinently:

"At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. We cannot sustain defendant's contention, erroneously made, on the strength of *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 [1932] that odors cannot be evidence sufficient to constitute probable cause for any search. That decision held only that odors alone do not authorize a search without a warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed, it might very well be found to be evidence of the most persuasive character." *Id.* at 13, 68 S.Ct. at 368–69, 92 L.Ed. at 440.[4]

**3.** The *Johnson* Court determined that entry to the room was demanded under color of office and granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. *Id.* at 13, 68 S.Ct. at 368, 92 L.Ed. at 440.

**4.** It is observed that the Court in *Johnson* was concerned with the question of odors as probable cause for the issuance of search warrants, and at bar we are concerned with the question of odors as probable cause for a warrantless arrest. It will be recalled that all arrests and searches, whether with or without a warrant, must be based upon probable cause and the standard is the same for both arrests and searches. *Commonwealth v. Benjamin,* 260 Pa.Super. 1, 5, 393 A.2d 982, 984 (1978). *See also Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Hughes,* 268 Pa.Super. 536, 408 A.2d 1132 (1979), pet. for allowance of appeal den. 268 Pa.Super. 536, 408 A.2d 1132 (1980); *Commonwealth v. Harmes,* 255 Pa.Super. 147, 386 A.2d 551 (1978).

In *Commonwealth v. Stoner,* 236 Pa.Super. 161, 344 A.2d 633 (1975), a police officer stopped an automobile for a traffic violation. When one of the passengers opened the glove compartment to obtain the vehicle registration card, a pistol dropped out. The officer thereupon ordered the Appellant, the driver, and all passengers out of the vehicle and arrested them for violation of the Uniform Firearms Act. The officer then returned to the vehicle to retrieve the pistol and as he reached in to do so, he noted a "very distinct" odor of marijuana about the interior of the vehicle.[5]

Although he observed marijuana leaves and seeds on the floor and seats of the vehicle, the officer was certain the odor was too strong to be emanating from the seeds and leaves in his view. Another officer arrived upon the scene and both then searched the trunk and found therein a large quantity of marijuana.

Following denial of appellant's motion to suppress the marijuana, he was convicted, *inter alia,* of possession of a controlled substance, and on appeal, contended that the warrantless search of the trunk violated the Fourth Amendment.

Our Court, discussing the question of probable cause to search the trunk, first held that the marijuana leaves and seeds alone established probable cause to search the automobile. We then added:

"However, we need not base our decision solely on the evidence in plain view. [The police officer] indicated additionally that he noted a very strong odor of marijuana coming from inside the car. He stated that the odor was, '[V]ery strong, it was similar to standing in the center of a field of marijuana'..."

We next observed that the Supreme Court of the United States has held "that an odor may be sufficient to establish probable cause for the issuance of a search warrant". *Id.,* 236 Pa.Super. at 166, 344 A.2d at 635, citing *Johnson, supra,*

5. The officer testified at appellant's trial that he was very familiar with marijuana. *Id.* at 163, 344 A.2d at 634.

and *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

We then noted that as the police officer was justifiably in the position from which he detected the odor, "[i]t would have been a dereliction of duty for him to ignore the obvious aroma of an illegal drug which he was trained to identify". *Id.* 236 Pa.Super. at 166, 344 A.2d at 635.

Affirming appellant's conviction, we finally quoted a passage from *United States v. Martinez-Miramontes,* 494 F.2d 808 (9th Cir. 1974), and adopted it as the law of Pennsylvania:

> " 'We find no distinction of substance between leaning down and turning the head to look inside a motor vehicle to see articles which then come within the "plain view" doctrine, (citation omitted), and leaning down and sniffing to detect the odor of marijuana' 494 F.2d at 810" *Id.* 236 Pa.Super. at 167, 344 A.2d at 636.[6]

More recently, a panel of this Court decided *Commonwealth v. Pullano,* 295 Pa.Super. 68, 440 A.2d 1226 (1982) where one of several police officers, while executing a search warrant in an apartment located on the second and third floors of a building, smelled a strong odor of marijuana which he determined to be emanating from another apartment on the first floor. After completing the search pursuant to the warrant, the police went to the first floor apartment to ascertain the names of the occupants. They knocked on the door and it was soon opened, revealing a group of persons surrounded by drug paraphernalia and marijuana cigarettes. The Appellant was seated in a chair holding a plastic vial containing a pill and a small plastic bag. When he saw the police, the Appellant attempted to drop the vial. He was thereupon placed under arrest and a search of his person revealed a pipe containing marijuana residue.

**6.** This concept has been referred to by some Courts as the "plain smell doctrine", *See, e.g. United States v. Curran,* 498 F.2d 30, 33 (9th Cir.1974).

Affirming appellant's conviction of violating the Controlled Substance, Drug, Device and Cosmetic Act following denial of his motion to suppress evidence, we said, pertinently:

"The officers at the scene had smelled a strong odor of burning marijuana, and had heard noises suggesting that a party was then in progress. These were circumstances suggesting that criminal activity was underway within their presence. They were not required to ignore that activity . . . *Indeed, at this point they already had probable cause to make an arrest."* (Emphasis Added). 295 Pa.Super. at 70, 440 A.2d at 1227.

Many of our sister jurisdictions, as well as a number of Circuit Courts of Appeal have also held that the odor of marijuana may, in combination with other circumstances, provide probable cause. *See, e.g., United States v. Rivera,* 595 F.2d 1095 (5th Cir.1979); *United States v. Curran, supra; United States v. Bowman,* 487 F.2d 1229 (10th Cir.1973); *State v. Medders,* 153 Ga.App. 680, 266 S.E.2d 331 (1980); *Miller v. State,* 373 So.2d 1004 (Miss.1979); *Moulden v. State,* 576 S.W.2d 817 (Tex.Cr.App.1978); *State v. Harrison,* 111 Ariz. 508, 533 P.2d 1143 (1975); *People v. Cook,* 13 Cal.3d 663, 119 Cal.Rptr. 500, 532 P.2d 148 (1975); *A Minor Boy v. State,* 91 Nev. 456, 537 P.2d 477 (1975); *State v. Compton,* 13 Wash.App. 863, 538 P.2d 861 (1975); *State v. Salcido,* 22 Ariz.App. 167, 525 P.2d 298 (1974); *Rogers v. State,* 131 Ga.App. 136, 205 S.E.2d 901 (1974); *People v. Parisi,* 46 Mich.App. 322, 208 N.W.2d 70 (1973); *State v. McGuire,* 13 Ariz.App. 539, 479 P.2d 187 (1971); *Commonwealth v. Cohen,* 359 Mass. 140, 268 N.E.2d 357 (1971); *Vaillancourt v. Superior Court for County of Placer,* 273 Cal.App.2d 791, 78 Cal.Rptr. 615 (1969). *See also,* 1 LaFave, *Search and Seizure* (1978) § 3.6, *supra.*

As we have observed, odors without more in the usual case will not provide probable cause. *Johnson, supra,* citing *Taylor v. United States, supra; United States v. Curran, supra;* and *See and Compare State v. Olson,* 180 Mont. 151, 589 P.2d 663 (1979); *State v. Valenzuela,* 121 Ariz. 274, 589 P.2d 1306 (1979); *People v. Hilber,* 403 Mich. 312, 269

N.W.2d 159 (1978). Appellant at bar grasps at this principle and contends that in our case there is nothing more than an odor, as in his view, the pipe stem protruding from his pocket appeared to be an innocuous metal tube and was not determined to be a part of a smoking pipe until it was seized by Sergeant Norton. Appellant's Brief at 5–6. Appellant, however, overlooks the requirement that we "focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might . . ." *Commonwealth v. Layman,* 290 Pa.Super. 244, 249, 434 A.2d 735, 737 (1981) *(quoting Commonwealth v. Tolbert, supra); Commonwealth v. Fiore,* 281 Pa.Super. 1, 4, 421 A.2d 1116, 1119 (1980); *Commonwealth v. Kazior, supra* 269 Pa.Super. at 523–4, 410 A.2d at 824–25.[7]

Testifying on the subject of the protruding stem, Sergeant Norton said the following:

"Q. [By the Assistant District Attorney] What did you do then, Sergeant?

A. [By Sergeant Norton] The two juveniles knew me; and I, of course, knew them. The Defendant I did not know at the time, and I asked him for identification. As he was producing his identification, I noted in his left coat pocket was a—breast coat pocket—a stem, a metal stem which appeared to be the stem of a pipe to me.

Q. Now, officer, in your experience as a police officer, would you say it was a normal pipe or one that was used for smoking of marijuana?

**7.** In *United States v. Mendenhall, supra* 446 U.S. at 563, 100 S.Ct. at 1882, 64 L.Ed.2d at 515, the Court observed:
"In reviewing the factors that led the agents to stop and question the respondent, it is important to recall that a trained law enforcement agent may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer' [Citation omitted]"
*See also, United States v. Brignoni-Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 619 (1975) ("In all situations the officer is entitled to assess the facts in light of his experience . . ."); *United States v. Tinkle,* 655 F.2d 617, 621 (5th Cir.1981) ("But in analyzing whether probable cause exists [to arrest] we must consider all of the relevant factors *viewed from the perspective of the arresting officer*".) (Emphasis added).

MR. STEINBERG: [Defense Counsel] Your Honor, I'm going to object at that time—at this time. I don't think a proper foundation has been laid. And if you see a mouthpiece of something, I don't know if you are qualified to testify it's a marijuana pipe.

THE COURT: Can we get a little deeper into that, Mr. Moyer?

MR. MOYER: Yes, Your Honor.

BY MR. MOYER:

Q. Have you ever seen any pipes used for smoking marijuana before in your fourteen years of experience, sergeant?

A. Yes, many times.

Q. Approximately how many times would you say?

A. More than a hundred, 150 times. I've been to numerous schools on the subject also.

Q. Have you taken—you've taken courses then, I take it?

A. That's correct.

Q. How many?

A. I've taken several at Lehigh County Community College and several in police training courses.

Q. Could you tell from just looking at a mouthpiece whether a pipe would probably be used for smoking of marijuana?

A. Yes, I believe you can.

Q. Do you think that the pipe that you observed on this date was one that would probably be used for smoking of marijuana?

MR. STEINBERG: I'm going to object to the form of the question, Your Honor.

THE COURT: Probably?

MR. STEINBERG: Yes.

THE COURT: Are you saying—do I understand you, sergeant, that if I have a pipe sticking out of my coat pocket that you can say that was used for smoking marijuana?

THE WITNESS: Your Honor, the general difference is 80 percent or better, maybe even 90 percent, of marijuana smokers don't use the average pipe stem which is rather flat. It's generally a round—either home-made or bought in that fashion—metal, wood sometimes. But they're generally—the stem is round rather than flat, not the type of pipe you're thinking of.

THE COURT: When you say 'this stem', that's what you are talking about?

THE WITNESS: Yes.

THE COURT: In other words, when you are talking about the stem of a pipe, we're not talking about the stem of a normal, commercial pipe. I'm not a pipe smoker, but I've smoked a pipe in my day.

THE WITNESS: That's correct.

THE COURT: That we normally associate with being a pipe stem.

THE WITNESS: That's not the type of stem I have reference to.

THE COURT: ... Are you saying then this is like, just a circular, straight stem?

THE WITNESS: Yes, Your Honor.

THE COURT: Like a straw?

THE WITNESS: Yes.

THE COURT: All right.

BY MR. MOYER:

Q. Sergeant, could you describe the stem that you saw? Was it round?

A. It was a round stem. I believe it was metal. My recollection is that it was a bluish color. And the part I saw sticking out of the pocket was perhaps half-inch long outside of the jacket.

Q. Would you say it's the type that's normally used for smoking tobacco?

A. No, sir.

Q. Would you say in your experience it's the type of pipe normally used for smoking marijuana?

. . . . .

A. Yes, it's normally used for smoking marijuana." (N.T.S.H. 9–13)

█ The observations and opinions thus described and expressed by Sergeant Norton are obviously those of a highly trained and experienced police officer and we find that when viewed through his eyes, the circumstances were sufficient "to warrant a man of reasonable caution in the belief" that Appellant had committed or was committing a crime. *Commonwealth v. Kazior, supra.* We therefore conclude that when Sergeant Norton observed the pipe stem protruding from Appellant's pocket, he had probable cause to arrest Appellant.

█ It is of course axiomatic that an arresting officer may, without a warrant, search a person validly arrested, and the constitutionality of a search incident to a valid arrest does not depend upon whether there is any indication that the person arrested possesses weapons or evidence as the fact of a lawful arrest, standing alone, authorizes a search. *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2630, 61 L.Ed.2d 343, 348 (1979). *And see, New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980); *Commonwealth v. Bess,* 476 Pa. 364, 382 A.2d 1212 (1978); *Commonwealth v. Pinney,* 474 Pa. 210, 378 A.2d 293 (1977).

█ It follows, then, that the search of Appellant's person, resulting in the discovery and seizure of the pipe and the shoulder bag containing the marijuana, was a lawful search and the lower court properly refused to suppress such evidence.[8]

Affirmed.

**8.** It may be suggested that at the moment Sergeant Norton seized the pipe, Appellant was not under arrest, and the record is not entirely clear on the question of whether Appellant had been advised verbally that he was under arrest before Sergeant Norton seized the shoulder

bag containing the marijuana in the course of the pat-down search. We respond by noting that an arrest may be accomplished by any act that indicates to the person arrested an intention on the part of the police officer to take such person into custody and that subjects such person to the actual control and will of the officer making the arrest. *Commonwealth v. Haggerty,* 495 Pa. 612–614, 435 A.2d 174, 175 (1981) (*quoting Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963)). Clearly, this test does not require that a person be verbally advised that he is under arrest before the arrest may be said to occur. Of equal significance, however, a search conducted immediately prior to an arrest is as valid as a search conducted subsequent and incident to the arrest provided the officer had probable cause to arrest prior to the search as long as the contraband discovered in the search is not used as justification or probable cause for the arrest. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Sibron v. New York, supra.* (Harlan, J. concurring); 2 LaFave, *Search and Seizure* (1978) § 5.4(a) at 336–38.