J-S40025-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN DAYSEAN MCINTOSH, | |
| Appellant | No. 2156 MDA 2013 |

Appeal from the Judgment of Sentence Entered November 20, 2013
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002301-2012

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:                  **FILED AUGUST 26, 2014**

Appellant, Steven Daysean McIntosh, appeals from the judgment of sentence of thirty days probation and a $100 fine after he was found guilty of possession of a small amount of marijuana.  Appellant claims the trial court erred when it denied his motion to suppress the seized contraband. After careful review, we reverse the order denying suppression and reverse the judgment of sentence.

A suppression hearing held on March 8, 2013, revealed the following facts: Officer Travis Carbaugh, employed with the Waynesboro Police Department for eight and a half years, testified that on December 3, 2012, he received a dispatch indicating that multiple shots had been fired into a residence at 115 West Second Street in Waynesboro.  N.T., 3/8/13, at 4. While responding to that call, he received a second dispatch regarding

additional shots having been fired at 132 West North Street, two blocks away from the location of the first shots. *Id.* Officer Carbaugh arrived at the West North Street address, where he found four or five individuals standing together on the sidewalk. *Id.* One of those individuals, Teresa Dunn (Dunn), indicated that she had been walking her dog near 132 West North Street when she heard multiple gunshots. *Id.* at 9-10. She then observed "a group of four black males walking out of the alley northbound." *Id.* at 10. As it was dark at the time, she "couldn't get a good description of any of them other than [that] they were four black males." *Id.* Dunn was the only person among the group on the sidewalk who witnessed anything. *Id.* at 12.

Dunn did not observe any of the black males firing a weapon, nor is there any indication that she observed any of them with a firearm. However, the four individuals emerged from the alley "a couple seconds" after Dunn heard the shots and saw the flash of a gunshot. *Id.* at 11. After retrieving this information from Dunn, Officer Carbaugh searched the area for "five to ten minutes" but did not locate anyone fitting Dunn's description. *Id.* at 15. After this unsuccessful search, Officer Carbaugh returned to Dunn, who then told the officer that the black males she had observed earlier were "now walking down West North Street." *Id.* at 16. Officer Carbaugh moved to that location, where he immediately observed three black males, Appellant and two others. *Id.* at 18. Officer Carbaugh drew his weapon and ordered them to the ground. *Id.*

Appellant and his companions complied with Carbaugh's orders. *Id.* at

19. Officer Carbaugh then waited for backup. *Id.* A few minutes later,

Officer Dewitt of the Washington Township Police arrived at the scene. *Id.*

Officer Dewitt handcuffed Appellant and one of his companions as the two

remained on the ground on their stomachs. *Id.* at 20. During this time,

Officer Carbaugh "covered them[,]" presumably with his firearm still drawn

*Id.* Soon thereafter, two adult probation officers arrived and cuffed the third

individual. *Id.* After Appellant was cuffed, Officer Dewitt patted him down

and noticed a bulge created by a hard object in the pocket of Appellant's

sweat pants. *Id.* at 33. Dewitt testified that "[i]t was approximately six,

eight inches in length … and by width it was probably four inches wide, if

that." *Id.* He then "rolled the pocket … inside out for the items to come

out." *Id.* at 34. From Appellant's pocket emerged an MP3 player and a

clear plastic baggie containing marijuana. *Id.*

The Commonwealth charged Appellant with possession of a small

amount of marijuana, 35 P.S. § 780-113(a)(31). On January 10, 2013,

Appellant filed a motion to suppress the marijuana as the product of an

illegal seizure. Following the March 8, 2013 suppression hearing, the parties

were ordered to file briefs. On May 2, 2013, the trial court issued an opinion

denying Appellant's suppression motion. Subsequently, Appellant was

convicted following a stipulated bench trial in which the court incorporated

the testimony from the March 8, 2013 suppression hearing. Appellant was

sentenced on November 20, 2013, to 30 days' probation and a fine of $100.

Appellant filed a timely notice of appeal on December 2, 2013. He also complied in a timely manner with the trial court's December, 4 2013 order directing him to file a Pa.R.A.P. 1925(b) concise statement. Appellant now presents the following question for our review:

> Whether the court erred by not suppressing the evidence of a small amount of marijuana and paraphernalia when [A]ppellant was unlawfully arrested and illegally searched?

Appellant's Brief at 7.

We are mindful of the following standards that apply in our review of Appellant's claim:

> "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.... [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Eichinger***, 591 Pa. 1, 915 A.2d 1122, 1134 (2007), *cert. denied*, 552 U.S. 894, 128 S.Ct. 211, 169 L.Ed.2d 158 (2007). Those properly supported facts are binding upon us and we "may reverse only if the legal conclusions drawn therefrom are in error." ***Id.***

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009).

> It is well settled that there are three distinct levels of interaction between law enforcement and the general public. The first level is the mere encounter, which need not be supported by any level of suspicion, but it carries no official compulsion to stop or respond. The second level is the investigative detention, which must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but it does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Daniels*, 999 A.2d 590, 596-97 (Pa. Super. 2010) (internal citations omitted).

> The key difference between an investigative detention and a custodial one is that the latter "involve[s] such coercive conditions as to constitute the functional equivalent of an arrest." In determining whether an encounter with the police is custodial, "[t]he standard ... is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized ..." and "must be determined with reference to the totality of the circumstances."

*Commonwealth v. Pakacki*, 901 A.2d 983, 987 (Pa. 2006) (internal citations omitted).

The Supreme Court of Pennsylvania has elaborated on the criteria for determining whether a functional equivalent of an arrest, *i.e.*, a custodial detention, has occurred, as follows:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 757 A.2d 884, 889-90 (Pa. 2000) (internal citations omitted).

Thus, we begin our analysis by considering whether Appellant was subjected to an investigative or custodial detention at the time he was

- 5 -

searched. The trial court states that "based on the actions of Officer Carbaugh at the scene, [Appellant] was under the control of the police and therefore was in custody at the time he was subjected to an investigative pat down." Trial Court Opinion, 11/7/13, at 8. The trial court based this conclusion on the fact that:

> Officer Carbaugh drew his firearm on the three individuals, including [Appellant], and instructed them to get down on the ground. He kept them in this position for approximately three to five minutes until Officer Dewitt arrived at the scene. At that time, [Appellant] was handcuffed and patted down. Based upon these actions, it is reasonable that [Appellant] would believe he was going to be taken into custody and was under the control of the police. Officer Carbaugh's action of keeping the group of individuals, including [Appellant], face down on the ground for several minutes at gunpoint is coercive enough to be the equivalent of an arrest.

*Id.*

We agree with this aspect of the trial court's analysis. Appellant was subjected to the functional equivalent of an arrest because a reasonable person would not feel free to leave in the circumstances presented by this case. However, after this point, the trial court's analysis is confusing. The trial court concludes that this 'arrest' was supported by probable cause. Nevertheless, the court then goes on to analyze whether Officer's Dewitt's pat down of Appellant was supported by reasonable suspicion. This latter step was unnecessary given the court's conclusion that the Officer Carbaugh possessed probable cause to justify Appellant's arrest. If Appellant's arrest was supported by probable cause, the court's inquiry should have ended, as

the subsequent 'pat down' would constitute a search incident to a lawful arrest. *See Commonwealth v. Trenge*, 451 A.2d 701, 710 (Pa. Super. 1982) ("It is of course axiomatic that an arresting officer may, without a warrant, search a person validly arrested, and the constitutionality of a search incident to a valid arrest does not depend upon whether there is any indication that the person arrested possesses weapons or evidence as the fact of a lawful arrest, standing alone, authorizes a search.").

Thus, if we conclude that Appellant's arrest was supported by probable cause, there is no need to consider the legality of the subsequent pat down. *See id.* If we conclude, however, that Appellant's arrest was not supported by probable cause, then the marijuana discovered during the subsequent pat down should have been suppressed since "evidence obtained as the result of an illegal arrest must be suppressed as 'fruit of the poisonous tree.'" *Commonwealth v. Modich*, 334 A.2d 717, 719 (Pa. Super. 1975). In reviewing whether there was probable cause to support Appellant's arrest, we are mindful of the following:

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require only a "probability, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted) (emphasis supplied). In determining whether probable

cause exists, we apply a totality of the circumstances test. ***Commonwealth v. Clark***, 558 Pa. 157, 735 A.2d 1248, 1252 (1999) (relying on ***Gates***, ***supra***).

***Thompson***, 985 A.2d at 931.

Officer Carbaugh did not have probable cause to arrest Appellant and his companions. Dunn's description of the four black males lacked any specificity upon which Officer Carbaugh could base a reasonable belief that the men he stopped were the same men Dunn had observed emerging from the alley. Dunn did not describe the facial features, clothing, age, size or any other identifying characteristic of the men she initially observed. The only identifying characteristics of note were the fact that the men were black and that there were four of them.

However, the men stopped by Officer Carbaugh, including Appellant, only fit the racial aspect of Dunn's description, which is, in and of itself, not a particularly individualized description in the context of this case.[1] Furthermore, Officer Carbaugh did not stop four black men; he stopped three black men. Moreover, Officer Carbaugh did not find Appellant and his companions until approximately 15 minutes after the shots were fired. Carbaugh indicated that it took him several minutes to respond to the dispatch, that he then spoke with Dunn for several minutes, and that he

_____

[1] Defense counsel asked Officer Carbaugh, "I must confess, I don't spend a lot of time in Waynesboro, but I'm assuming there is more than just four black males [there]?" N.T., 3/8/13, at 14. Officer Carbaugh answered, "Yes." ***Id.***

- 8 -

searched for 5-10 minutes before returning to Dunn for more information. Thus, a considerable amount of time had passed from when the shots were fired until Appellant was stopped. That was certainly enough time for the shooters to have moved more than a block away, which is where Appellant was found. The only piece of information that linked Appellant and his companions to the shooting that occurred in the alley was the fact that they shared racial characteristics with the men observed by Dunn right after the shooting.

Additionally, Dunn did not directly witness the shooting. The men she observed emerging from the alley were not seen firing a weapon, carrying a weapon, or fleeing from the scene of the shooting. According to Dunn, the four black males casually *walked* out of the alley just seconds after she heard the shots. N.T., 3/8/13, at 9-10. When Officer Carbaugh did stop Appellant and his two companions, he did not observe any suspicious behavior on their part.

Given the totality of these circumstances, it is clear that Officer Carbaugh lacked probable cause to arrest Appellant. Specifically, he lacked reasonably trustworthy information that Appellant and his companions were the same individuals observed by Dunn emerging from the alley after the gunshots were heard. Furthermore, Officer Carbaugh lacked reasonably trustworthy information that the men observed by Dunn were responsible for the shooting. Accordingly, Appellant's arrest was illegal and, thus, the trial

court abused its discretion when it denied Appellant's motion to suppress the seized marijuana, which was the fruit of that illegal arrest.

Order denying Appellant's motion to suppress **reversed**. Judgment of sentence **reversed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014