408 A.2d 1132

**COMMONWEALTH of Pennsylvania**

v.

**Philip James HUGHES, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Filed Aug. 16, 1979.

Petition for Allowance of Appeal Denied Jan. 30, 1980.

Philip D. Freedman, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

This is a direct appeal from judgment of sentence of the Court of Common Pleas of Dauphin County, Criminal Divi-

sion. On September 24, 1976, a jury found appellant guilty of the statutory crimes of possession with intent to deliver a controlled substance [1] and carrying a firearm without a license.[2] After post-trial motions were timely filed and denied, this appeal ensued.

Of the four contentions briefed by appellant only two have been properly preserved for appellate review:[3] 1) whether appellant's warrantless arrest and search of the auto in his custody were based upon probable cause and conducted under exigent circumstances; and, 2) whether in establishing a violation of The Uniform Firearms Act, *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975) mandates the Commonwealth prove beyond a reasonable

1. Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(30) (1977).

2. Pennsylvania Uniform Firearms Act, 18 Pa.C.S. §§ 6105, 6106 (1973).

3. Appellant also maintains he was "deprived . . . of a fair and impartial trial," *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). This prejudice is said to stem from remarks by the trial judge during the course of cross-examination of one of the Commonwealth's witnesses by defense counsel. However, defense counsel neither objected to this alleged prejudicial remark when made, nor did he move for a mistrial at that point; rather, counsel did not bring this to the trial judge's attention until the Commonwealth closed its case. We have often stated that a party must comply with two requirements in order to preserve an issue. First, the litigant must make a timely specific objection. *Commonwealth v. Mitchell*, 461 Pa. 555, 337 A.2d 292 (1975); *see, e. g., Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975). Second, he must argue the alleged error on a post-trial motion. *Commonwealth v. Blevins*, 459 Pa. 652, 331 A.2d 180 (1975); *see, e. g., Commonwealth v. Keysock, supra*. Timeliness requires a specific objection at the proper stage in the questioning of the witness and at the proper stage in the trial proceedings. Therefore, since appellant failed to make a timely objection, consideration of this issue is foreclosed.

Appellant also argues the Commonwealth failed to produce sufficient evidence to establish possession of the drugs and firearm. This assignment of error was not specifically raised by appellant in his post-trial motions or post-trial brief, and was not ruled upon below. This issue also is not preserved. *Commonwealth v. Kearney*, 459 Pa. 603, 331 A.2d 156 (1975); *see, e. g., Commonwealth v. Duncan*, 235 Pa.Super. 15, 340 A.2d 555 (1975).

doubt not only that the accused does not have a license for a weapon, but also that the accused does not come within any of the statutory exceptions to the licensure requirement. We find these contentions to be without merit; accordingly, we affirm.

The testimony material to a proper examination of the first assignment of error may be briefly summarized as follows:

At approximately 12:00 A.M. of August 20, 1975, while off duty and at his residence, Officer Robert Kessler of the Pennsylvania State Police received a phone call from a confidential source whom he knew. The source telephoned to inform Officer Kessler of information obtained by the source in an alleged conversation that evening with appellant, Philip Hughes. The informant related that appellant, by automobile, was leaving York, Pennsylvania sometime after midnight destined for the City of Harrisburg, Pennsylvania. The informant further stated appellant would be traveling in a 1965 or 1966 Cadillac, maroon in color with a black top, bearing Pennsylvania Registration Plate 90N–026, and that appellant would be transporting over an ounce of heroin which he intended to distribute upon arrival in Harrisburg. Officer Kessler, believing this tip to be reliable, returned to active duty immediately.

Without obtaining a search or arrest warrant, Officer Kessler decided to establish a surveillance roughly seven or eight miles south of Harrisburg at the Pennsylvania Turnpike where it intersects Interstate 83. Officer Kessler and his partner, Officer Paul Evanko, obtained the assistance of four plainclothes officers and two marked police vehicles to create this surveillance. At approximately 1:15 A.M. the vehicle was observed by Officer Kessler traveling north on Interstate 83. Officer Kessler proceeded to follow the vehicle, and with the aid of his radio directed the other marked police cars to follow. After following the car north for seven or eight miles, Officer Kessler noticed the vehicle exiting at the Second and Paxton Streets ramp. He then requested that the other police vehicles detain the Cadillac.

When such an opportunity arose, Trooper Evanko went to the driver's side of the Cadillac and ordered appellant to open the door. Appellant removed himself from the car at which time Officer Evanko searched his person for weapons, handcuffed him and placed him under arrest for possession of heroin. Appellant was then placed in a police vehicle which had stopped behind the Cadillac. Officer Kessler at this same time was standing at the driver's door. Prior to entering the auto to move it he observed the butt handle of a revolver under the armrest on the front seat. Thereafter, sitting in the driver's seat, he also noticed two small unopened boxes in a trash receptacle on the console. Officer Kessler opened these boxes and discovered packs of a substance which he believed to be a controlled substance.[4]

Trooper Kessler then drove the auto to the State Police Barracks and, shortly after arrival, additionally charged appellant with possession of the controlled substances discovered in the trash receptacle.[5] Shortly thereafter, a district magistrate issued a search warrant. A subsequent search of the trunk of the secured Cadillac revealed a shoulder bag containing cocaine, drug paraphernalia, and appellant's address book. Included in the address book were appellant's driver's license and selective service card.

Appellant initially urges his warrantless arrest, and search of the auto in his custody, could not have been made consistently with the Fourth Amendment as neither were based upon probable cause nor conducted under exigent circumstances. Our analysis, therefore, must initially commence with a determination of whether probable cause existed to arrest appellant or search the auto in his custody.[6]

4. Subsequent investigation disclosed that 24 of these packets contained cocaine and 27, heroin.

5. While the record and trial court's opinion are not clear on this point, presumably Officer Kessler charged appellant with possession of the substance which he believed at the time to be other than heroin, and for possessing the firearm.

6. In this case, as in many others which have come before us, the information which is relied upon to justify the warrantless arrest is

In the instant case as probable cause was based upon information received from an informant, two requirements must be met:

> "First, in order to assure that the tip is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect participated in the [crime]. Second, in order to reduce the possibility that a tip meeting the first standard is merely a well constructed fabrication, the officer must have some reasonable basis for concluding that the source of the tip was reliable." *Betrand Appeal*, 451 Pa. 381, 386, 303 A.2d 486, 488 (1973); *see, e. g., Commonwealth v. Hawkins*, 240 Pa.Super. 56, 362 A.2d 374, 376 (1976).

Appellant contends that neither requirement was met at the suppression hearing as Officer Kessler testified only that informant was "reliable." Appellant's contention would have merit if this were all the suppression judge had before him; however, there was much more. In addition to the officer's assertion of reliability, the judge received into evidence the search warrant which was obtained after appellant's arrest.[7] The information in the warrant stated not

also relied upon as furnishing probable cause for a warrantless search. Furthermore, the analysis of whether probable cause exists for a warrantless arrest is similar to that required of a magistrate when he determines whether a search warrant should be granted. *See, e. g., Spinelli v. United States*, 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Commonwealth v. Brown*, 228 Pa.Super. 158, 161, 323 A.2d 104, 105 (1974).

7. The warrant was moved into evidence by appellant and provided: "This officer was told by a confidential source that Philip HUGHES was leaving York, Penna., enroute to the City of Harrisburg with over an ounce of heroin and that he (HUGHES) intended to distribute said heroin to parties unknown in the City of Harrisburg. This information was told to this confidential source by HUGHES in the evening hours to [sic] 20 Aug. 75. Additionally this source told this officer that HUGHES would be transporting said heroin in a 1965 or 1966 Cadillac, maroon in color with a black top, bearing Penna. Registration plate # 90N–026. This informant is believable and reliable because he has supplied this officer with information during the past four months that lead [sic] to the arrest of one subject for possession of heroin, another for possession of heroin and a third for receiving stolen goods. Seized as a result of the aforementioned subjects [sic] arrest was a large amount of heroin and a large quantity of stolen goods.

only that the informant was reliable, but also that three prior arrests and a quantity of narcotics and stolen goods were confiscated as a result of information provided by this source. These additional allegations certainly go beyond a mere assertion that prior information was "helpful" in other arrests and investigations, *see Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975), and on this record were sufficient to establish that the officer had a reasonable basis for concluding that the informant was reliable.

The search warrant also related that it was on the basis of an alleged conversation with appellant that the informant based his tip that appellant would be traveling to Harrisburg sometime that morning in a particular auto and in possession of more than an ounce of heroin. This information went beyond a mere conclusion that the defendant possessed narcotics, *see Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and was not based on outside information or knowledge. *Compare, Commonwealth v. Smith*, 453 Pa. 326, 309 A.2d 413 (1973) (where the source "found out" that the accused persons had narcotics in their possession). The underlying circumstances for the informant's tip being based upon appellant's admission, the first requirement of *Betrand, supra*, also was satisfied.[8] Thus, despite the desirability of having all the information contained in the affidavit restated by the prosecuting officer at the suppression hearing, we are persuaded that Officer

Additionally, this officer personally took Philip HUGHES into custody at 1:30 A.M., 21 Aug 75, in the City of Harrisburg, Dauphin Co., Penna., and at that time an amount of heroin, and cocaine (24 packs of heroin and 27 packs of cocaine), located in the console of a 1966 Cadillac Sdn. Maroon and Black in color bearing Penna. Registration Plates # 90N–026 for 1975 which Philip HUGHES was driving."

8. Further attenuating the accused's claim is the fact he failed to utilize his opportunity to cross-examine the Commonwealth's witness at the suppression hearing as to the name of those allegedly arrested and whether any convictions had resulted from those arrests. Cf. *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973) (defendant may cross-examine affiant to test the truthfulness of the affiant's assertions that informant's information had led to prior convictions).

Kessler's sworn oral testimony supplemented by his written affidavit provided a sufficient evidentiary basis to establish that probable cause was initially present to arrest appellant.[9]

Appellant next contends the Commonwealth failed to prove beyond a reasonable doubt the essential elements of the firearms offense. The thrust of this argument is *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975) which, appellant contends, mandates the conclusion that the numerous exceptions found in section 6106(b) of The Uniform Firearms Act[10] are essential elements in establishing a

**9.** Additionally, the rules of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) validated the subsequent discovery of the firearm and narcotics within the passenger compartment of the car. The present circumstances clearly come within *Chambers* as the police did not know beforehand to proceed to a particular location where a stationary vehicle could be observed and searched; nor were the officers told of the route into Harrisburg, as what time to expect the vehicle, or for that matter who the owner of the vehicle was. More fundamentally, due to the timing of the information the officers could have reasonably believed that time was of the essence if the crime were to be prevented. *Compare Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (police had known for some time of the probable role of the car in the crime) *with Commonwealth v. Linde*, 448 Pa. 230, 293 A.2d 62 (1972) (search conducted when car in police custody, locked, unoccupied and with owner in hospital undergoing emergency surgery).

**10.** Uniform Firearms Act, 18 Pa.C.S. § 6106(b) (1973), provides:
"(b) Exceptions.—The provisions of subsection (a) of this section shall not apply to:
(1) Constables, sheriffs, prison or jail wardens, or their deputies, policemen of this Commonwealth or its political subdivisions, or other law enforcement officers.
(2) Members of the army, navy or marine corps of the United States or of the National Guard or organized reserves when on duty.
(3) The regularly enrolled members of any organization duly organized to purchase or receive such weapons from the United States of from this Commonwealth.
(4) The members of any organization incorporated under the laws of this Commonwealth, engaged in target shooting with rifle, pistol, or revolver, if such members are at or are going to or from their places of assembly or target practice.
(5) Officers or employes of the United States duly authorized to carry a concealed firearm.

violation of section 6106 of the Act.[11]  While we have never decided this precise issue, we feel that our decisions subsequent to *McNeil* and our Supreme Court's decision in *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979) foreclose such a judgment.  In *McNeil*, it was held that in prosecutions for carrying a firearm without a license pursuant to section 6106 of the Act the Commonwealth had the unshifting burden of proving the accused did not have a license for the firearm at the time of arrest.  This conclusion was based upon the "structure of the statute."  461 Pa. at 715, 337 A.2d at 843.

Subsequent to *McNeil* we decided *Commonwealth v. Bigelow*, 250 Pa.Super. 330, 378 A.2d 961 (1977) and *Commonwealth v. Pope*, 250 Pa.Super. 626, 379 A.2d 603 (1977) both of which were affirmed in *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979).  In *Bigelow*, it was held in a prosecution brought under section 6108 of the Act[12] the Commonwealth *did not* have the affirmative burden of proving as an element of the offense that the accused *did not* have a license to carry the firearm.  The rationale and

(6) Agents, messengers and other employes of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables, and other property in the discharge of such duties.
(7) Any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person, having in his possession, using or carrying a firearm in the usual or ordinary course of such business.

**11.**  Uniform Firearms Act, 18 Pa.C.S. § 6106 (1973), provides:
"§ 6106.  Firearms not to be carried without a license.
(a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter."

**12.**  Uniform Firearms Act, 18 Pa.C.S. § 6108 (1973), provides:
"§ 6108.  Carrying firearms on public streets or public property in Philadelphia.
No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
(1) Such person is licensed to carry a firearm; or
(2) Such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license)."

analysis employed in reaching that determination is equally applicable to the case at bar.

Implicit in that analysis was recognition of two familiar doctrines of statutory construction: (1) words and phrases ought to be construed with regard to the accepted rules of grammar and by common usage;[13] and, (2) in ascertaining and carrying out the intention of the legislature we will presume that the legislature did not intend a result that is absurd, impossible to execute, or unreasonable.[14] *Bigelow*, 250 Pa.Super. at 332, 378 A.2d at 965; *see, e. g., Commonwealth v. Poindexter*, 248 Pa.Super. 564, 569, 375 A.2d 384, 387 (1977), *rev'd on other grounds*, 484 Pa. 476, 399 A.2d 390 (1979).

■ Applying these principles, we note the language defining the offense in section 6106(a) of the Act clearly, accurately, and fully describes the conduct sought to be punished without resort to subsection (b) of 6106 (Exceptions). Grammatically, section 6106(b) is completely divorced from the more specific provisions of 6106(a) which defines the essential elements of the crime. The "exceptions" constitute a distinct clause which is not an element of the offense, but is rather in the nature of a defense. As a matter of defense these "exceptions" "need not be either plead or proved by the prosecution." *Bigelow*, 484 Pa. at 483, 399 A.2d at 395 (quoting with approval from *United States v. Winnicki*, 151 F.2d 56, 58 (7th Cir. 1945); *accord, Commonwealth v. Neal*, 78 Pa.Super. 216, 219 (1922); *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 140, 323 A.2d 318, 324 (1974).

Accordingly, the Act envisions the "exceptions" of section 6106(b) as defensive matter, and not as an element of a section 6106 offense, which matter if to be raised must be plead initially by the accused. As the accused in the instant matter did not plead nor prove this matter, and the Commonwealth introduced testimony at trial from the supervisor

13.  1 Pa.C.S. § 1923 (Supp.1978–79).

14.  1 Pa.C.S. § 1922 (Supp.1978–79).

of The Firearms Records Unit of the Pennsylvania State Police which confirmed that the accused did not have a license to carry a firearm at the time of his arrest, the Commonwealth met its burden.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.