## Commonwealth v. Hudson

*James M. Jacobs, Jr., assistant district attorney,* for the Commonwealth.

*Donald Tarosky,* for defendants.

COFFROTH, *P.J.*, October 17, 1985—This is an appeal from defendants' summary conviction of failing to stop at stop signs before entering an intersection, under Vehicle Code §3323(b), which provides in relevant part as follows:

"Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, every driver of a vehicle approaching a stop sign shall stop . . . ." In a consolidated hearing, it appeared that one defendant was operator of a lowboy trailer with a permitted oversize (width and length) load, and the other defendant operated the rear pilot vehicle. The front pilot vehicle operated by a third person (not charged) had preceded defendant through the stop sign without being observed by the officer, who did see defendants go through the sign and the intersection without stopping. The officer testified that defendants turned eastward after entering the intersection from the south, that no one was directing traffic either in the intersection or eastward thereof.

Defendants invoke the statutory exception, testifying that the driver of the vehicle had stopped it in the middle of the highway about 100 feet east of the intersection and had dismounted and stood there with a red flag, directing traffic, and had also directed defendants by two-way radio to come on through the intersection without stopping, which they did.

After seeing defendants enter the intersection without stopping, the officer entered his vehicle which was parked about 200 feet north of the intersection, pursued defendants, stopped them and cited them; and when he arrived on the main highway he saw no one directing traffic. Defendants said that the lead driver had by that time gotten back in his vehicle and was proceeding eastward. When defendants stopped to respond to the officer, the lead driver returned to the scene but did not talk to the officer, nor did the officer interview him. Defendants said they informed the officer of the lead pace car (required by law to accompany such a permitted load), but did not specifically state that its car driver had been directing traffic nor that they had been told to come on through the intersection. Defendants also testified that it is standard practice to bring the oversize vehicle through the intersection without stopping, primarily because of the size of the loaded vehicle (gross weight 126,000 lbs.) and its low highway clearance of only a few inches, which makes stopping dangerous at intersectional turns because of possible scraping and becoming hung up.

The Commonwealth attacks the credibility of defendants on the issue of traffic direction because the officer saw none and defendants mentioned none to him, on the theory that if defendants' story of traffic direction were true, it would be natural for them to mention it to the officer. But we do not view the case in that light. The driver of the lead pilot car is authorized by PennDot Regulations to direct traffic in such a situation, and that is not contested. See 67 Pa. Code §179.10(13) (i) A, B and D. Nor has the Commonwealth challenged the attire of that driver for directing traffic. The fact that defendants and the other operator did not mention traffic direction

to the officer tends to impair their testimony somewhat but not seriously because, as one defendant said, they never argue with a police officer, a not uncommon practice of wise motorists. Moreover, when the officer saw defendants come through the stop sign into the intersection, he was north of the intersection, out of his vehicle and unable to see the portion of the east-bound highway where traffic was being directed; and while the officer was getting into his vehicle to pursue defendants, the lead driver was getting back into his; so that when the officer arrived at a point where he could see eastward, the lead driver had gone, hence the officer did not see him directing traffic. As to the lack of conversation between the lead driver and the officer after the stop, that omission is attributable to the officer's failure to interview him, rather than to the driver's failure to exit his vehicle and take the initiative to present himself to the officer; a lead vehicle was required by law for such a permitted load, giving the officer ample reason to make full inquiry concerning the whereabouts and activities of the lead driver.

Another important and interesting question here is burden of proof of the statutory exception, whether it is on defendants to prove or on the Commonwealth to disprove traffic direction. Although the issue was not mentioned by either side, we who must decide evidentiary sufficiency are necessarily governed by the proper rule.

Allocating the burden of proof of an exception to a general rule is not always easy. In civil cases at least, ". . . it is usually fairer to act as if the exceptional situation did not exist and therefore to place the burden of proof and persuasion [and of pleading] on the party claiming its existence." McCormick On Evidence (Third Edition, West 1984) §337, page 951 at note 16. This is especially

so when the exception exists by virtue of judicial decisions, or by statutory or contractual provisions which are stated separate and distinct from the statement or definition of the cause of action rather than as an integral part thereof. Babcock v. Wilderness Club, 37 Somerset L. J. 329, 332 14 D.&C.3d 115 (1979), quoting from McKelvey v. U.S., 67 LEd 301 (1922) and from Commonwealth v. Bigelow, 476 Pa. 483, 399 A.2d, 392, 395 (1979), as follows:

"By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it."

Although the foregoing principle is applicable to both civil and criminal cases, there is this important difference: it is unconstitutional to allocate to a criminal accused any burden of persuasion on the elements of a crime which are essential to determine guilt or innocence; thus the burden is always upon the Commonwealth to persuade the fact-finder of every fact or element which is essential to guilt. In Re Winship, 25 LEd2d 368 (1970); Mullaney v. Wilbur, 44 LEd2d 508 (1975); Commonwealth v. Thompson, 27 Somerset L. J. 241, 260 (1971). But the burden of persuasion must be distinguished from the burden of initially producing or going forward with evidence on a particular issue. Thompson, supra, at 255-257. It is constitutionally permissible to shift to the accused the duty of producing evidence of facts constituting an exception to or exemption from liability when such dispensation exists separately from the statutory or

contractual definition of the basic cause of action; that is, as stated in Bigelow, quoted supra, when the exception or exemption is stated in ". . . . a proviso or other distinct clause, whether in the same section or elsewhere . . . " Patterson v. New York, 53 LEd2d 281 (1977). When dealing with a statute, it is the legislative intent which governs whether the exception or exemption is an essential and integral element of the crime. Bigelow, supra, and Commonwealth v. McNeil, 461 Pa. 709, 337 A.2d 840 (1975). If the exception or exemption is such an essential and integral part of the offense, the Commonwealth has both the burdens of persuasion and of initially producing evidence to negate the exception or exemption, and to do so beyond reasonable doubt; if it is not such an integral element, even though an essential element, defendant has the burden of producing some credible evidence sufficient to raise a legitimate issue by creating the basis for reasonable doubt that the exception or exemption is applicable; once defendant produces such evidence, the burden of going forward with evidence to negate the exception or exemption beyond a reasonable doubt passes to the Commonwealth. Patterson, supra; Commonwealth v. Sojourner, 268 Pa. Super. 488, 408 A.2d 1108 (1979); Commonwealth v. Fisher, 276 Pa. Super. 72, 419 A.2d 100 (1980); Commonwealth v. Parrott, 287 Pa. Super. 83, 429 A.2d 731 (1981); Commonwealth v. Herman, 288 Pa. Super. 219, 431 A.2d 1016 (1981); Commonwealth v. Fisher, 294 Pa. Super 486, 440 A.2d 570 (1982); Commonwealth v. Ford, 315 Pa. Super. 281, 461 A.2d 1281 (1983).

In the instant case, the language of the statutory exception of Vehicle Code §3323(b) quoted ante incorporates the exception into and apparently as an integral part of the definition of the offense, instead

of expressing the exception separately and distinctly from that definition. Compare Commonwealth v. Hughes, 268 Pa. Super. 536, 546, 408 A.2d 1132 (1979). On that reasoning, the Commonwealth has the burden of negating the exception, both by producing evidence on the issue and by persuasion of the fact-finder beyond a reasonable doubt. Compare Commonwealth v. McNeil, supra; Bigelow, supra; Commonwealth v. Merkel, 15 D.&C.3d 428 (1980); compare Thompson, supra. Even if the exception is treated as a distinct element, not integral to the definition of the crime, shifting to defendant the burden of initially producing credible evidence of the exception's applicability, compare Sojourner and Hughes both supra, and Commonwealth v. Miller, 38 Somerset L. J. 289, 299 (1979), and Id, 38 Somerset L. J. 390, 393 (1980), defendants have produced such evidence here. So whichever canon is applicable, the Commonwealth has the burden of production and of persuasion negating the exception. They have not done so for the reasons previously articulated respecting the reasonableness and credibility of the testimony.

Hence, defendants are entitled to the benefit of the doubt and must be acquitted; while the Commonwealth has clearly proved failure to stop, its evidence negating lawful traffic direction does not eliminate reasonable doubt.

## ORDER

Now, October 17, 1985, for the foregoing reasons we find defendants not guilty as charged, costs on the county.