J-E01002-17

2017 PA Super 276

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
JASON ANDERSON : No. 2764 EDA 2014

Appeal from the Order Entered May 22, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001233-2014

BEFORE: BENDER, P.J.E., BOWES, J., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON, J., DUBOW, J., MOULTON, J., and SOLANO, J.:

OPINION BY SOLANO, J.: **FILED AUGUST 23, 2017**

The Commonwealth appeals from an order quashing two Pennsylvania Uniform Firearms Act ("PUFA")[1] charges against Appellee Jason Anderson, a private security guard. Anderson carried a firearm in Philadelphia without first obtaining a license for the firearm, although he did possess a certificate issued to him pursuant to the Lethal Weapons Training Act ("Act 235").[2] In this interlocutory appeal as of right,[3] the Commonwealth argues that Anderson's possession of his Act 235 certificate did not excuse him from the requirement of a license under the PUFA and that the trial court erred in quashing the charges on the basis of that certificate. We agree with the

---

[1] 18 Pa.C.S. §§ 6101-6127.

[2] Act No. 1974-235, P.L. 705 (Oct. 10, 1974), 22 P.S. §§ 41 to 50.1.

[3] In its notice of appeal, the Commonwealth certified "that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

Commonwealth and hold that an Act 235 certificate does not serve as a substitute for a license under the PUFA. Accordingly, we reverse the order below and remand for further proceedings.

The charges stem from an altercation on North Dewey Street in Philadelphia on November 3, 2013. Anderson was on his way home from his job as a private security guard, and he stopped at a party to pick up a friend who had asked him to take her home. He was wearing a bullet-proof vest and a security badge or lanyard around his neck, and he was carrying a gun; he stopped his car in the middle of the street. Meanwhile, Mark Ellis drove onto the street behind Anderson and stopped to drop off food at the home of a local resident, Syreeta Manire. After Manire retrieved the food, Ellis quickly proceeded to drive away. Anderson's car was blocking the street, and Ellis stopped a few feet behind it. Anderson and Ellis then exchanged words. Ellis pulled out a gun, and Anderson tried to grab that gun from him. Shots were fired, and Anderson shot and killed Ellis. A subsequent police investigation determined that Anderson was not licensed to carry a firearm, but that he did possess a valid Act 235 certificate. Trial Ct. Op., 9/24/14, at 2-3.

The Commonwealth decided not to prosecute Anderson for any homicide-related charges stemming from the shooting. But on January 17,

2014, it charged Anderson with impersonating a police officer[4] and violating two provisions of the PUFA: Section 6106(a)(1), which prohibits carrying a firearm without a license, and Section 6108, which prohibits carrying an unlicensed firearm on public streets or public property in Philadelphia.[5]

On February 11, 2014, Anderson filed a motion to quash the PUFA charges. After hearing argument, the trial court granted Anderson's motion. In an opinion, the court explained that Act 235 requires private security guards to carry a certificate under the Act when "on duty or going to and from duty and carrying a lethal weapon," and that, in the court's view, this constitutes "legislatively created permission to carry a firearm on the street while 'going to and from duty.'" Trial Ct. Op., 9/24/14, at 4-5. The court observed that penal statutes like the PUFA should be strictly construed, and it stated that "the special provisions in Act 235 prevail over general provisions in the [PUFA]" because they were the later provisions to be enacted. *Id.* at 5-6. Therefore, Anderson was "entitled to avail himself of Act 235's specific permission for him to be carrying a firearm at the time of his arrest" and could not be charged with violating the PUFA. *Id.* at 6.

The Commonwealth timely appealed. A panel of this Court issued a memorandum decision that reversed without reaching the Act 235 issue that

_____

[4] 18 Pa.C.S. § 4912. This charge was based on Manire's testimony that Anderson identified himself as a police officer. Anderson denies making that statement.

[5] 18 Pa.C.S. §§ 6106(a)(1), 6108.

- 3 -

was the basis for the trial court's decision. **_Commonwealth v. Anderson_**, 2764 EDA 2014 (Pa. Super. July 21, 2016) (unpublished memorandum).[6] This Court then granted the Commonwealth's application for reargument _en banc_, withdrew the panel's decision, and received new briefs and argument.

The Commonwealth presents the following question for review:

Did the [trial] court err in quashing charges under the Uniform Firearms Act based on its erroneous conclusion that certification under "Act 235" is a substitute for a license to carry a firearm?

Commonwealth's Brief at 5. The Commonwealth claims it established a _prima facie_ case for the PUFA violations based on its allegations that Anderson (1) carried a firearm in his car and in a concealed manner on his person, (2) was on a public street of Philadelphia, and (3) was not licensed under the PUFA. **_Id._** at 16. The Commonwealth concedes Anderson possessed an Act 235 certificate, but argues that "Act 235 and the firearms licensing statutes — set forth in the [PUFA] — are **separate** regulatory schemes, and an individual who carries a firearm incident to employment is required to comply with **both** of them." **_Id._** at 18 (emphasis in original).

In response, Anderson concedes that an Act "235 [certificate] is not a substitute for a valid license to carry under [P]UFA when that individual is NOT on duty or going to and from duty." Anderson's Brief at 4 (unpaginated; capitalization in original). However, Anderson argues that an

_____

[6] Former Justice Fitzgerald issued a concurring memorandum in which he said he would reverse on the merits.

- 4 -

individual whose duty is to "protect moneys, valuables and other property," does not violate Sections 6106(a)(1) and 6108 "when the individual is carrying out those duties" because the PUFA contains an exception for such individuals under Section 6106(b)(6). *Id.* He posits that "[t]he only logical reason for carrying [an Act 235] certificate is to show [it to] law enforcement while on duty and traveling to and from duty with a lethal weapon, which the individual is Act 235 certified [to do even though he] does not possess a valid license to carry under [P]UFA." *Id.* at 2-3. Thus, Anderson contends his Act 235 certificate is a "substitution" that "allows an individual who is [Act] 235 certified" but does not carry a valid license to nonetheless "carry a lethal weapon to and from" work. *Id.*

The following principles govern our review:

> The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law as to which this Court's review is plenary.
>
>> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Commonwealth v. Nieves*, 876 A.2d 423, 424 (Pa. Super.) (citations, brackets, and internal quotation marks omitted), *appeal denied*, 891 A.2d 731 (Pa. 2005). Here, whether the Commonwealth presented a *prima facie* case is dependent on whether the trial court correctly construed the statutes at issue. We have observed:

> In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law. In making this determination, we are guided by the Statutory Construction Act, which dictates:
>
> **§ 1921. Legislative intent controls**
>
> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> 1 Pa.C.S. § 1921. As a general rule, the best indication of legislative intent is the plain language of a statute.

*Commonwealth v. McFadden*, 156 A.3d 299, 305 (Pa. Super. 2017) (internal quotation marks and some citations omitted). Our Supreme Court further instructed in *Commonwealth v. Stotelmyer*, 110 A.3d 146 (Pa. 2015):

> Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons

are *in pari materia* and should be construed together, if possible, as one statute. If two statutes conflict, they are to be construed so effect may be given to both, if possible; if this is not possible, the special provision prevails over the general one as an exception to it, unless the general one was enacted later and there is manifest legislative intent that it prevail.

110 A.3d at 150 (quotation marks and citations omitted).

Because this case involves the interplay between the PUFA and Act 235, we begin by surveying the terms of each statute.

**The PUFA.** The PUFA has been a part of Chapter 61 of the Crimes Code since the Code's original enactment in 1972,[7] but its current form is the result of substantial amendments made in 1995.[8] In a preamble to the 1995 legislation, the General Assembly stated:

The General Assembly hereby declares that the purpose of this act is to provide support to law enforcement in the area of crime prevention and control, that it is not the purpose of this act to place any undue or unnecessary restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, transfer, transportation or use of firearms, rifles or shotguns for personal protection, hunting, target shooting, employment or any other lawful activity, and that this act is not intended to discourage or restrict the private ownership and use of firearms by law-abiding citizens for lawful purposes or to provide for the

_____

[7] Act No. 1972-334, P.L. 1482, 1574 (Dec. 6, 1972).

[8] ***See*** Act No. 1995-17 (Spec. Sess. 1), P.L. 1024 (June 13, 1995). The amendments renamed the relevant provisions the "Uniform Firearms Act of 1995." 18 Pa. C.S. § 6101. The Supreme Court has observed that, despite its name, the statute is not a "uniform act" in the sense of a statute sharing similar provisions with other states' laws. Rather, the PUFA's provisions are unique to the Commonwealth, and the word "uniform" in its title refers to the creation of uniform firearms provisions throughout the Commonwealth. ***Allegheny County Sportsmen's League v. Rendell***, 860 A.2d 10, 21 n.6 (Pa. 2004).

- 7 -

imposition by rules or regulations of any procedures or requirements other than those necessary to implement and effectuate the provisions of this act. The General Assembly hereby recognizes and declares its support of the fundamental constitutional right of Commonwealth citizens to bear arms in defense of themselves and this Commonwealth.

Act No. 1995-17 (Spec. Sess. 1), P.L. 1024 (June 13, 1995).

Anderson is charged with violating Section 6016(a)(1) of the PUFA,

which provides:

> . . . any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).[9]  He also is charged with violating Section 6108,

which provides:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1) such person is licensed to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

_____

[9] Section 6122(a) of the PUFA states:

> When carrying a firearm concealed on or about one's person or in a vehicle, an individual licensed to carry a firearm shall, upon lawful demand of a law enforcement officer, produce the license for inspection. Failure to produce such license either at the time of arrest or at the preliminary hearing shall create a rebuttable presumption of nonlicensure.

18 Pa.C.S. § 6122(a).

18 Pa.C.S. § 6108. Unlike Section 6106, Section 6108 prohibits all unlicensed carriage of firearms in Philadelphia, not just unlicensed concealed carriage.

The provisions of Section 6106(a) and 6108 both are subject to exceptions to their licensing requirements that are listed in Section 6106(b). One of those exceptions states:

> The provisions of [Section 6106(a)] shall not apply to:
>
> \* \* \*
>
>  (6) Agents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties.

18 Pa.C.S. § 6106(b)(6).[10] None of Section 6106(b)'s provisions states that it excepts persons holding Act 235 certificates.

Licenses under the PUFA must be issued pursuant to Section 6109, which prescribes detailed requirements for their issuance and terms. The specified purpose of a license is to permit concealed or vehicular carriage of a firearm. 18 Pa.C.S. § 6109(a). A license is issued in response to an

---

[10] The PUFA states:

> An individual carrying a firearm on or about his person or in a vehicle and claiming an exception under section 6106(b) (relating to firearms not to be carried without a license) shall, upon lawful demand of a law enforcement officer, produce satisfactory evidence of qualification for exception.

18 Pa.C.S. § 6122(b).

application made by a person 21 years of age or older to the sheriff of the applicant's county[11] on a form prescribed by the Pennsylvania State Police. 18 Pa.C.S. § 6109(b), (c); *see* 37 Pa. Code §§ 33.101 to 33.131 (State Police regulations for PUFA licensing). The applicant must state a "proper reason" for making the application, one of which may be "employment," and may obtain the license only after an investigation by the sheriff to determine such things as whether the applicant is of sound mind or has a prior criminal record. 18 Pa.C.S. § 6109(c)-(e), (g). The license must contain a photograph of the licensee and specified descriptive information, along with a special identifying license number and contact information that can be used in responding to law enforcement inquiries through the Firearms License Validation System. *Id.* § 6109(e)(3), (*l*).[12] Section 6109 states that nothing in it shall be construed to "[a]uthorize any Commonwealth agency to regulate the possession of firearms in any manner inconsistent with the provisions of this title." *Id.* § 6109(m.3)(2).

*Act 235.* The General Assembly enacted Act No. 1974-235, the Lethal Weapons Training Act, on October 10, 1974. In doing so, the Legislature stated the Act's purpose as follows:

---

[11] In Philadelphia, the application is made to the chief of police. 18 Pa. C.S. § 6109(b).

[12] The Firearms License Validation System is a nationwide system available to law enforcement personnel to enable verification of the validity of firearms licenses. *See* 18 Pa. C.S. § 6109(*l*).

(a) The General Assembly finds that there are private detectives, investigators, watchmen, security guards and patrolmen, privately employed within this Commonwealth who carry and use lethal weapons including firearms as an incidence of their employment and that there have been various tragic incidents involving these individuals which occurred because of unfamiliarity with the handling of weapons. The General Assembly also finds that there is presently no training required for such privately employed agents in the handling of lethal weapons or in the knowledge of law enforcement and the protection of rights of citizens, and that such training would be beneficial to the safety of the citizens of this Commonwealth.

(b) It is the purpose of this act to provide for the education, training and certification of such privately employed agents who, as an incidence to their employment, carry lethal weapons through a program administered or approved by the Commissioner of the Pennsylvania State Police.

Act No. 1974-235 § 2, 22 P.S. § 42. The Act defines "lethal weapons" to include firearms. *Id.* § 3, 22 P.S. § 43. It defines "privately employed agents" to include persons "employed for the purpose of providing watch guard, protective patrol, detective or criminal investigative services either for another for a fee or for his employer." *Id.*

Act 235 requires the State Police Commissioner to establish and administer "[a]n education and training program in the handling of lethal weapons, law enforcement and protection of rights of citizens." Act No. 1974-235 § 4(a), 22 P.S. § 44(a). With exceptions not relevant here, all "privately employed agents" are required to attend that program, and, upon its satisfactory completion, they "shall be entitled to certification by the commissioner." *Id.* § 4(b), 22 P.S. § 44(b).

Persons may apply to enroll in the program if they are 18 years of age or older, pass a criminal background check, and meet other requirements established by the Commissioner. Act No. 1974-235 § 6, 22 P.S. § 46; *see* 37 Pa. Code § 21.11 (eligibility criteria established by Commissioner). When they complete the program, they receive "an appropriate wallet or billfold size copy of the certificate, which shall include a photograph of the individual thereon." Act No. 1974-235 § 7(b), 22 P.S. § 47(b). There are two classes of certifications, one of which entitles the agent to be armed with all types of lethal weapons, including a firearm, and the other of which authorizes use of weapons other than firearms. 37 Pa. Code § 21.12. The State Police regulations call the certificate issued for both types of certifications a "certification card" and state that it "must be in the form of a laminated, wallet or billfold size card containing identifying information, type of certification, and a color photograph of the applicant." *Id.* § 21.20. Notably, the regulations state, "The issuance of a certification card to a privately employed agent does not grant the agent the right or privilege to carry, possess, own, or have under his control a firearm contrary to 18 Pa.C.S. §§ 6101–6120 (relating to Uniform Firearms Act)." *Id.* § 21.26(d).

The Act requires agents to carry their certification cards when on duty. Section 8(a) provides:

> Privately employed agents must possess a valid certificate whenever on duty or going to and from duty and carrying a lethal weapon.

22 P.S. § 48(a).  Section 7(c) provides further:

> Every certified individual shall carry his wallet or billfold size certificate on his person as identification during the time when he is on duty or going to and from duty and carrying a lethal weapon.

*Id.* § 47(c).  Failure to comply with Section 8(a) is a misdemeanor punishable by up to one year in prison, and failure to comply with Section 7(c) is a summary offense.  Act No. 1974-235 § 9, 22 P.S. § 49.

### Act 235 Certificates as "Substitutions" for Firearms Licenses

Anderson contends that he may not be prosecuted for violating the PUFA's licensing requirements because his Act 235 certificate serves as a lawful "substitution" for the firearms license required by the PUFA.  Our review of the two statutes makes clear that this contention is incorrect for two broad reasons.

First, the PUFA requires a person carrying a firearm to have a license, but an Act 235 certificate is not a license and does not function as a type of document that could serve as a substitute for a license.  A "license" is "[the] permission by competent authority to do an act which, without such permission, would be illegal . . . [or the] certificate or the document itself which gives permission."  BLACK'S LAW DICTIONARY 829 (5th ed. 1979); *see*, *e.g.*, *Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.*, 761 A.2d 139, 144 (Pa. Super. 2000).  A government license "constitutes governmental 'permission'" to do an act.  *See Redevelopment Authority*

- 13 -

*of Philadelphia v. Lieberman*, 336 A.2d 249, 257 (Pa. 1975). Hence, a firearms license grants permission by the Commonwealth to carry a firearm.

An Act 235 certificate grants no such permission. A "certification" is the formal assertion in writing of some fact, and a "certificate" is the written assurance that some act has been done or some legal formality complied with. BLACK'S LAW DICTIONARY at 205-06. Act 235 requires privately employed agents who carry lethal weapons to attend an educational and training program established by the State Police Commissioner and provides for them to receive "certification" when the program is satisfactorily completed. Act No. 1974-235 § 4(b), 22 P.S. § 44(b). Act 235 certification thus attests to an agent's successful completion of the training course required by the statute. The certification is evidenced by a certificate (or "certification card") issued by the Commissioner, which the agents must then carry while on duty. *Id.* §§ 7(b) & (c), 8(a), 22 P.S. §§ 47(b) & (c), 8(a). But nothing in Act 235 states that this certificate grants its bearer permission from the Commonwealth to carry a firearm or other weapon. The certificate merely attests to the fact that its bearer has satisfied a mandatory condition — completion of training — that is necessary to carry a weapon while on duty under the statute. The State Police regulations under the Act make this distinction clear, stating that issuance of the certificate "does **not** grant the agent the right or privilege to carry, possess, own, or have under his control a firearm." 37 Pa. Code § 21.26(d) (emphasis

added).  In other words, it does not grant a license.  Because the State Police are charged with administering Act 235 and also carry out significant responsibilities under the PUFA, that agency's understanding of the Act 235 certificate that it issues is entitled to substantial deference.  *See Banfield v. Cortes*, 110 A.3d 155, 174 (Pa. 2015).[13]

An Act 235 certificate thus does not act as the "license" required by Sections 6106 and 6108 of the PUFA and cannot serve as a substitute for that license.  This is especially evident with respect to Section 6106(a)(1), which requires a person carrying a firearm to have "a valid and lawfully issued license *under this chapter*."  "This chapter" is Chapter 61 of the Crimes Code (Title 18 of Pennsylvania Consolidated Statutes).  Act 235 is not part of any chapter of the Crimes Code, and, indeed, was not enacted as part of Pennsylvania Consolidated Statutes.  The license required by these PUFA provisions is that under Section 6109 of the PUFA, the specific licensing provision in Chapter 61.  An Act 235 certificate does not fit that bill.

_____

[13] We find the terms of the PUFA and Act 235 clear, but if we did not, we would derive significant guidance from the State Police regulation on their meaning.  The Statutory Construction Act states that, "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering . . . administrative interpretations of such statute."  1 Pa.C.S. § 1921(c)(8).  Because the statutory provisions are clear, the trial court's reliance on such canons of construction as the rule that penal statutes are to be strictly construed, 1 Pa. C.S. § 1928(b)(1), was improper.  "Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous."  *In re Trust Under Agreement of Taylor*, No. 15 EAP 2016, ____ A.3d ____, 2017 WL 3044242, at *6, 2017 Pa. LEXIS 1692, at *17 (Pa., July 19, 2017).

We will not belabor the point, but we add that an Act 235 certificate has several features that would make it an inappropriate "substitution" for a firearms license under the PUFA statutory scheme. For one thing, the eligibility requirements for the two documents are different. An Act 235 certificate may be issued to an 18-year-old, for example, while a firearms license may not be issued to anyone under 21. The form and content of the two documents are different as well. One significant difference is that each firearms license has an identification number that can be checked nationwide by law enforcement investigators through the Firearms License Validation System; an Act 235 certificate is not searchable in that system.

Second, nothing in the PUFA authorizes anyone to substitute another form of gun authorization for the license required by the PUFA. Indeed, the PUFA's licensing provision, Section 6109, warns that no Commonwealth agency is authorized to regulate the possession of firearms in any manner inconsistent with the PUFA. 18 Pa. C.S. § 6109(m.3)(2). Anderson argues, however, that the exception to the PUFA's licensing requirement in Section 6106(b)(6) for certain persons who are employed to protect money or other property demonstrates that the PUFA does not require security guards like himself to have firearms licenses so long as they possess Act 235 certificates. Anderson's Brief at 4. Anderson's argument misinterprets the PUFA.

Section 6106(b) contains no exception for persons carrying Act 235 certificates. Indeed, nothing in the PUFA ever mentions Act 235 certificates or even acknowledges their existence. The exceptions in Section 6106(b) are affirmative defenses that may be raised at trial by persons charged with PUFA violations. *Commonwealth v. Lopez*, 565 A.2d 437, 440 (Pa. 1989); *Commonwealth v. Hughes*, 408 A.2d 1132, 1138 (Pa. Super. 1979). Therefore, Anderson may defend himself at trial by seeking to prove that he meets each of the elements described in Section 6106(b)(6) for persons who protect valuables and property in the discharge of their duties, and, if he is successful, may be found not guilty of the PUFA charges.[14] But the fact that Anderson may assert a defense under Section 6106(b)(6) does not mean that his possession of an Act 235 certificate in connection with his work entitles him to have the charges dismissed.

Anderson's argument seeks improperly to meld his defense under Section 6106(b)(6) with requirements of Act 235 to create some sort of immunity from prosecution for security guards carrying Act 235 certificates. *See* Anderson's Brief at 4. He points out that the defense under Section

---

[14] *See Commonwealth v. Walton*, 529 A.2d 15, 17 (Pa. Super. 1987) (suggesting Section 6106(b)(6) applies to "persons employed as guards, watchmen, protective patrols, and private detectives, who are required in the discharge of their duties to protect money, valuables, and property"), *appeal denied*, 539 A.2d 811 (Pa. 1988). We note that Anderson was not acting in the performance of his duties when he shot Ellis, and we express no view on the merits of any defense Anderson may make under Section 6106(b)(6).

6106(b)(6) applies to "agents" of banks or other businesses who carry firearms to protect "moneys, valuables and other property" in the course of their duties and that Sections 7(c) and 8(a) of Act 235 require "privately employed agents" who carry firearms, including private security guards like Anderson, to carry an Act 235 certificate when they are on duty or traveling to or from duty. From this, he suggests that a security guard who is on duty or traveling to or from duty is exempt from the requirement to have a firearms license so long as he has an Act 235 certificate. But Anderson's melding of Section 6106(b)(6) and Act 235 is unsupported by the statutes themselves. The exception in Section 6106(b)(6) has been part of the PUFA since the Crimes Code was first enacted in 1972, **see** Act No. 1972-334, 1972 P.L. at 1576, and therefore has nothing to do with the fact that an "agent" covered by it may carry an Act 235 certificate, since such certificates did not exist in 1972 and would not exist until passage of Act 235 two years later. Section 6106(b)(6) does not reference Act 235, and Act 235 does not reference Section 6106(b)(6). There therefore is no statutory basis for Anderson's apparent speculation that Section 6106(b)(3) evidences a legislative intent silently to make possession of an Act 235 certificate an excuse not to carry a firearms license.

Anderson's argument that an Act 235 certificate serves as a "substitution" for a PUFA firearms license finds no support in either statute.

The trial court therefore erred in dismissing the PUFA charges against Anderson on the basis of that argument.

## Reconcilability of the PUFA and Act 235

In support of its view that Anderson's compliance with Act 235 excused his failure to carry a firearms license, the trial court held that an irreconcilability between the PUFA and Act 235 requires that the requirements of Act 235 control. Trial Court Opinion at 6. The trial court based this reasoning on Section 1933 of the Statutory Construction Act, which provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933. The court characterized the provisions of Act 235 as "special provisions" that should prevail over the 'general provisions" of the PUFA because Act 235 was enacted later (in 1974) than the PUFA (1972). Trial Ct. Opinion. at 6.

The trial court's analysis was flawed for several reasons. First of all, with respect to gun licensing, it is not readily apparent to us what it is about Act 235 that makes its provisions "special" when compared to those of the PUFA. The Supreme Court has observed that such characterizations sometimes are "mutable" and unhelpful, and, given that the PUFA is a

statute that requires licensing and Act 235 says nothing about licensing, that seems to be the case here. **See generally Stotelmyer**, 110 A.3d at 154 n.13; **Commonwealth v. Hansley**, 47 A.3d 1180, 189-90 (Pa. 2012). In addition, the trial court's labeling of Act 235 as the more recent law was overly simplistic in light of the extensive revisions that the Legislature made to the PUFA in 1995 and the numerous amendments it has made to that statute (and, in particular, to Section 6106) since then.[15] The Legislature has had many opportunities to incorporate provisions relating to Act 235 into the PUFA if it wished to do so, but it has not taken such action.

More important, however, there is nothing about the PUFA and Act 235 that is "irreconcilable." "[C]onsistent with our overarching goal of construing statutes to fulfill the intent of the General Assembly, we are obliged to construe [two statutes] in harmony, if possible, so as to give effect to both." **In re Downingtown**, 161 A.3d 844, 871 (Pa. 2017). This rule of construction is in accord with the Legislature's directive that we construe statutes dealing with the same subject matter as *in pari materia*, 1 Pa. C.S. § 1932, and that such statutes "be considered concurrently whenever

---

[15] Since Act 235's enactment in 1974, Section 6106 has been amended seven times. **See** Act No. 1986-93, P.L. 442 (July 8, 1986); Act No. 1988-158, P.L. 1275 (Dec. 19, 1988); Act No. 1995-66, P.L. 621 (Nov. 22, 1995); Act No. 1997-5, P.L. 73 (Apr. 22, 1997); Act No. 2000-101, P.L. 728 (Dec. 20, 2000); Act No. 2005-66, P.L. 335 (Nov. 10, 2005); Act No. 2008-131, P.L. 1628 (Oct. 17, 2008). The licensing provisions in Section 6109 have undergone a similar number of amendments. There have been no amendments to Section 6108.

possible and if they can be made to stand together effect should be given to both as far as possible." ***Downingtown***, 161 A.3d at 871 (quoting ***Kelly v. City of Philadelphia***, 115 A.2d 238, 245 (Pa. 1955)). Upon applying these principles, it is clear that the PUFA and Act 235 can coexist in harmony and that there is no reason to hold that the provisions of one statute supersede those of the other.

Both the PUFA and Act 235 regulate firearms by imposing separate and complimentary requirements for their possession. The PUFA requires that those carrying firearms be licensed. The purpose of this requirement "is to provide support to law enforcement in the area of crime prevention and control," Act No. 1995-17 (Spec. Sess. 1), 1995 P.L. at 1024, by creating a system to screen those eligible to carry firearms and to document and verify lawful gun possession. ***See Commonwealth v. Scarborough***, 89 A.3d 679, 686-87 (Pa. Super.), ***appeal denied***, 102 A.3d 985 (Pa. 2014). Act 235 requires certain professionals who carry firearms for security purposes to be certified in the weapons' proper use. Its purpose is to prevent the occurrence of "tragic incidents" due to "unfamiliarity" with proper weapons handling. Act No. 1974-235 § 2, 22 P.S. § 42.

There is no reason why persons required to be certified under Act 235 cannot also be required to be licensed under the PUFA. To the contrary, the dual requirements can work in a complementary fashion to further the Legislature's dual aims of law enforcement and safety. We thus agree with

the Commonwealth that the PUFA and Act 235 set forth separate, independent, and entirely compatible regulatory schemes, and that "an individual who carries a firearm incident to employment is required to comply with **both** of them." Commonwealth's Brief at 18 (emphasis in original). There thus is no irreconcilability calling for application of Section 1933 of the Statutory Construction Act. In holding to the contrary, the trial court erred.

In sum, we conclude that Act 235 is not a "substitution" for a license to carry a firearm and that Act 235's provisions do not supersede the licensing requirements in the PUFA. Accordingly, we reverse the trial court's decision and remand this matter for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/23/2017